**Elvira Horrel WYATT, Appellant,**

v.

**Rolando LONGORIA, M.D., Appellee.**

No. 08–99–00174–CV.

Court of Appeals of Texas, El Paso.

Aug. 31, 2000.

J. Morgan Broaddus, III, John Grost, El Paso, for Appellant.

David S. Jeans, John W. McChristian, Jr., Ray, McChristian & Jeans, P.C., El Paso, for Appellee.

Before Panel No. 2 BARAJAS, C.J., McCLURE, and CHEW, JJ.

## O P I N I O N

ANN CRAWFORD McCLURE, Justice.

This is a medical malpractice case in which Elvira Horrel Wyatt sued Dr. Rolando Longoria for negligent misdiagnosis. Dr. Longoria moved for summary judgment, contending first that Wyatt's claims were barred because Texas does not recognize a cause of action for wrongful life, and second, that her economic injuries were not proximately caused by his purported negligence. The trial court granted the motion without specifying the grounds upon which it relied. We affirm in part and reverse in part.

## SUMMARY OF THE EVIDENCE

In November 1994, Wyatt traveled to El Paso to visit her granddaughter. At the time, she was 78 years old and a resident of Austin. During the visit, Wyatt became ill and complained of abdominal pains. She consulted Dr. Longoria, a gastroenterologist, and was scheduled for an x-ray, CT scans of the abdomen and pelvis, and a mammogram. Following the x-ray and CT scans, Dr. Longoria told Wyatt that she had cancer of the liver and peritoneum. He advised her that the cancers found in her abdomen were the result of metastatic breast cancer, and that she had only three to six months to live. Dr. Longoria then canceled the mammogram, believing the diagnosis to be academic.

Relying on Dr. Longoria's bleak prognosis, Wyatt began preparing for her death. She decided to sell her Austin townhome and move in with her granddaughter so that she could pursue treatment with Dr. Longoria. She gifted her personal possessions to relatives and friends, including several valuable oil paintings, a valuable porcelain collection, and her home furnishings. Finally, Wyatt made funeral arrangements and had her dog put to sleep.

The course of treatment pursued by Dr. Longoria involved paracentesis, a process designed to relieve the build-up of fluids in Wyatt's abdomen. The procedure is performed by puncturing the abdomen wall with a needle, and drawing out the excess fluid. On a number of occasions, Wyatt had multiple liters withdrawn from her abdomen. She began to lose weight and became very weak. This course of treatment continued until August 1995 when Dr. Longoria ordered a biopsy which revealed that Wyatt had lymphoma, not breast cancer. She discontinued treatment with Dr. Longoria, and went to the University of Arizona Cancer Center, where she received chemotherapy and occasional paracentesis. In December 1995, she returned to El Paso for a continuation of treatments.

In November 1996, Wyatt brought suit against Dr. Longoria for medical malpractice, complaining that Dr. Longoria negligently misdiagnosed her cancer as terminal. She alleged that he breached the standard of care owed to her by failing to fully evaluate her, to provide her with the proper course of treatment, and to refer her to a competent specialist. She claimed that this breach of duty caused her to suffer severe emotional anguish, physical pain, and medical expenses. Pursuant to the Texas Medical Liability and Insurance Act, Wyatt timely filed an expert medical report. *See* Tex.Rev.Civ.Stat.Ann. art. 4590i, § 13.01 (Vernon Supp.2000). She tendered the opinion of Dr. Ira Klein that Longoria had breached the standard of care of a practicing gastroenterologist by continuing to treat Wyatt without obtaining "a definitive pathological diagnosis." Dr. Klein concluded that Dr. Longoria was negligent in failing to obtain tissue biopsies and in failing to refer Wyatt to an oncologist. In addition to her damages for physical pain, emotional anguish, and med-

ical expenses, Wyatt also complained that the misdiagnosis caused her to incur certain economic losses arising from property dispositions she had made while believing that her death was imminent.

## WRONGFUL LIFE?

When the trial court grants summary judgment without specifying its reasons, the judgment will be affirmed if any of the theories advanced in the motion are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989); *Doe v. Franklin*, 930 S.W.2d 921, 924 (Tex.App.—El Paso 1996, no writ). First, we review the theory that Wyatt's claim is barred because Texas does not recognize a cause of action for wrongful life. Wyatt contends that special exceptions, not summary judgment, are the proper vehicle for complaining that no cause of action has been alleged. Summary judgment should not be based on a pleading deficiency that might be cured by amendment. *Saenz v. Southern Union Gas Co.*, 916 S.W.2d 703, 705 (Tex.App.—El Paso 1996, writ denied); *Friesenhahn v. Ryan*, 960 S.W.2d 656, 658–59 (Tex. 1998); *In the Interest of B.I.V.*, 870 S.W.2d 12, 13 (Tex.1994); *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983); *Texas Department of Corrections v. Herring*, 513 S.W.2d 6, 9 (Tex.1974). Whether pleadings fail to state a cause of action may not be resolved by summary judgment. *Massey*, 652 S.W.2d at 934. Special exceptions are the appropriate method for claiming that plaintiff has failed to state a cause of action, because plaintiffs must have an opportunity to cure a deficient petition by amendment before their lawsuit is dismissed for failing to state an actionable claim. *B.I.V.*, 870 S.W.2d at 13.

Dr. Longoria counters that it was not necessary to comply with special exception procedure because Wyatt's petition alleges facts which affirmatively negate her cause

of action. *Herring*, 513 S.W.2d at 9; *Cortez v. Liberty Mutual Fire Insurance Company*, 885 S.W.2d 466 (Tex.App.—El Paso 1994, writ denied). In support of his argument, he directs us to *Nelson v. Krusen*, 678 S.W.2d 918 (Tex.1984), in which the Supreme Court considered whether a plaintiff could bring a malpractice action when the crux of the complaint was that but for the defendant's negligence, the plaintiff would not have been born.[1] *Nelson*, 678 S.W.2d at 924. The Court refused to recognize a cause of action for wrongful life because of the "high value which the law and mankind has placed on human life, rather than its absence" and because the calculation of damages involves a rationally impossible task of weighing life against non-life. *Id.* The Court noted that it had no objective standard by which to review the plaintiff's assertion that it would be better to not have been born. "Man, who knows nothing of death or nothingless, cannot possibly know whether this is so." *Id.*

Wyatt's petition does not allege that she has been injured because she has continued to live beyond the short "three to six month" period which Dr. Longoria predicted. Instead, she claims that Dr. Longoria was negligent and that his negligence caused her to suffer emotional anguish and physical pain, and to incur medical expenses. If she can establish that these injuries were caused by Dr. Longoria's negligence, then she is entitled to recover under a malpractice theory. *See* TEX.REV. CIV.STAT.ANN. art. 4590i, § 1.03(4); *Sullivan v. Methodist Hospitals of Dallas*, 699 S.W.2d 265, 274 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). We conclude that the petition states a cause of action for medical malpractice, not wrongful life. Wyatt's first and second issues are sustained.

---

**1.** The Court distinguished an action for negligence which causes life from an action for negligence which causes injury or impairment to a child, noting that "there is no allegation that but for the defendant's negligence the child would have had a healthy, unimpaired life. Instead, the claim is that without the doctor's negligence the plaintiff never would have been born." *Nelson*, 678 S.W.2d at 925.

## PROXIMATE CAUSE

We now consider the theory that Wyatt's economic injuries were not proximately caused by Dr. Longoria's misdiagnosis. Wyatt contends that the misdiagnosis caused her to make ill-advised property dispositions and that Dr. Longoria should be liable for her resulting economic losses. Dr. Longoria moved for both a traditional and a no-evidence summary judgment. *See* Tex.R.Civ.P. 166a(c) and (i). We turn now to the applicable standards of review.

### *Standards of Review*

In a traditional summary judgment proceeding, the standard of review on appeal is whether the successful movant at the trial level carried the burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991); *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985); *Duran v. Furr's Supermarkets, Inc.*, 921 S.W.2d 778, 784 (Tex.App.—El Paso 1996, writ denied). Thus, the question on appeal is not whether the summary judgment proof raises fact issues as to required elements of the movant's cause or claim, but whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more elements of the movant's cause or claim. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970); *Duran*, 921 S.W.2d at 784. In resolving the issue of whether the movant has carried this burden, all evidence favorable to the non-movant must be taken as true and all reasonable inferences, including any doubts, must be resolved in the non-movant's favor. *Nixon*, 690 S.W.2d at 548–49; *Duran*, 921 S.W.2d at 784; *Borrego v. City of El Paso*, 964 S.W.2d 954, 956–57 (Tex.App.—El Paso 1998, pet. denied). When the defendant is the movant and submits summary evidence disproving at least one essential element of each of the plaintiff's causes of action, then summary judgment should be granted. *Perez*, 819 S.W.2d at 471; *Duran*, 921 S.W.2d at 784; *Borrego*, 964 S.W.2d at 956–57.

A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex.App.—San Antonio 1998, rev. den.); *Robinson v. Warner–Lambert & Old Corner Drug*, 998 S.W.2d 407, 410 (Tex.App.—Waco 1999, no pet. h.); *see also S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex.1996). We review the evidence in the light most favorable to the respondent against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997); *Moore*, 981 S.W.2d at 269; *Robinson*, 998 S.W.2d at 410. A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Id.* Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Ruiz v. Government Employees Ins. Co.*, 4 S.W.3d 838, 840 (Tex.App.—El Paso 1999, no pet.), *citing Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Havner*, 953 S.W.2d at 711.

### *Elements of Medical Malpractice*

In a medical malpractice cause of action, the plaintiff must prove by competent testimony that the defendant's negligence proximately caused her injury. *Duff v. Yelin*, 751 S.W.2d 175, 176 (Tex. 1988); *Hood v. Phillips*, 554 S.W.2d 160, 165–66 (Tex.1977); *Lenger v. Physician's General Hospital, Inc.*, 455 S.W.2d 703, 706 (Tex.1970); *Hart v. Van Zandt*, 399

S.W.2d 791, 792 (Tex.1965). To do so, the plaintiff must establish four elements: (1) a duty by the physician to act according to a certain standard; (2) a breach of the applicable standard of care; (3) an injury; and (4) a causal connection between the breach of care and the injury. *Wheeler v. Aldama–Luebbert,* 707 S.W.2d 213, 217 (Tex.App.—Houston [1st Dist.] 1986, no writ); *Klug v. Ramirez,* 830 S.W.2d 801, 804 (Tex.App.—Corpus Christi 1992, no writ). Dr. Longoria has chosen to attack only the proximate causation of Wyatt's property dispositions.

### Cause in Fact

The components of proximate cause are cause in fact and foreseeability. *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex.1995); *Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex. 1992). These elements cannot be established by mere conjecture, guess, or speculation. *McClure v. Allied Stores of Texas, Inc.,* 608 S.W.2d 901, 903 (Tex.1980); *Farley v. MM Cattle Co.,* 529 S.W.2d 751, 755 (Tex.1975). The test is whether the negligent act or omission was a substantial factor in bringing about injury, without which the harm would not have occurred. *Doe,* 907 S.W.2d at 477. Cause in fact is not shown if the defendant's negligence did no more than furnish a condition which made the injury possible. *See Bell v. Campbell,* 434 S.W.2d 117, 120 (Tex.1968). Whether a particular act of negligence is a cause in fact of an injury has been said to be a particularly apt question for jury determination. *Farley,* 529 S.W.2d at 756.

We conclude that Wyatt has raised a fact issue as to whether Dr. Longoria's diagnosis was a cause in fact of her economic losses. The uncontroverted evidence establishes that Dr. Longoria diagnosed Wyatt with metastatic breast cancer when in fact she had lymphoma. Dr. Klein opined that Dr. Longoria's failure to obtain tissue biopsies and his failure to refer Wyatt to an oncologist breached the standard of care for a gastroenterologist.

Wyatt believed that she needed to dispose of her assets due to Dr. Longoria's misdiagnosis and his prognosis of short-term survival. This was a substantial factor in bringing about the injury which would not otherwise have occurred.

### Foreseeability

Foreseeability requires a court to determine a question of legal policy—whether the defendant should be responsible for the plaintiff's injuries. *See City of Gladewater v. Pike,* 727 S.W.2d 514, 518 (Tex.1987)(holding that proximate cause eventually mandates weighing of policy considerations); *Doe,* 907 S.W.2d at 478; *see also,* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 42 (5th Ed.1984). The issue of foreseeability only arises "[o]nce it is established that the defendant's conduct has in fact been one of the causes of the plaintiff's injury." *See* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 42 at 272–73 (5th Ed.1984). The inclusion of the foreseeability element in proximate causation analysis represents judicial recognition that "[a]t some point in the causal chain, the defendant's conduct or product may be too remotely connected with the plaintiff's injury to constitute legal causation." *Union Pump Company v. Allbritton,* 898 S.W.2d 773, 775 (Tex.1995). As the Supreme Court has observed:

In this state it is now a settled doctrine that anticipation of consequences is a necessary element in determining not only whether a particular act or omission is actionably negligent, but also whether the injury complained of is proximately caused by such act or omission. This doctrine is the result of an effort by the courts to avoid as far as possible the metaphysical and philosophical niceties in the age-old discussion of causation, and to lay down a rule of general application which will, as nearly as may be done by a general rule, apply a practical test, the test of common experience, to human conduct when deter-

mining legal rights and legal liability. Actual anticipation is of course not in any sense the test; but what one should under the circumstances reasonably anticipate as consequences of his conduct [internal citations omitted].

See *Houston Lighting & Power Co. v. Brooks*, 161 Tex. 32, 336 S.W.2d 603, 606–07 (1960), *quoting Dallas v. Maxwell*, 248 S.W. 667, 670, 27 A.L.R. 927 (Tex.Com. App. opinion, approved by Supreme Court); *see also, Allbritton*, 898 S.W.2d at 775 (commenting that the law does not hold one legally responsible for the remote results of his wrongful acts and therefore a line must be drawn between immediate and remote causes).[2]

▬▬▬ Foreseeability requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission. *Doe*, 907 S.W.2d at 478; *Nixon*, 690 S.W.2d at 549–50. The danger of injury is foreseeable if its general character might reasonably have been anticipated. *Doe*, 907 S.W.2d at 478; *Nixon*, 690 S.W.2d at 551. The question of foreseeability involves a practical inquiry based on "common experience applied to human conduct." *City of Gladewater*, 727 S.W.2d at 518. It asks whether the injury "might reasonably have been contemplated" as a result of the defendant's conduct. *McClure*, 608 S.W.2d at 903. Foreseeability requires more than someone, viewing the facts in retrospect, theorizing an extraordinary sequence of events whereby the defendant's conduct brings about the injury. *See* RESTATEMENT (SECOND) OF TORTS § 435(2)(1965).

▬▬▬ Because the facts are undisputed, the issue before us is solely one of policy. Wyatt argues that Dr. Longoria should be legally responsible for her decisions to sell her home and give away her personal property to friends and relatives. She contends that responsibility flows from the fact that Dr. Longoria misdiagnosed her particular form of cancer and caused her to believe that her death was imminent. She justifies imposing liability because it is plainly foreseeable that a patient will prepare for death when told that she has a terminal illness and only a short time to live. We disagree.

First, we observe that Wyatt's economic injuries do not directly or immediately flow from the acts and omissions which comprise the negligent misdiagnosis. Rather, the property dispositions flow from some of the more remote consequences of the misdiagnosis—Wyatt's belief in her impending death and her decision to plan for her death by disposing of her assets. This fact is significant because existing precedent recognizes that a physician's liability extends only to physical injuries which directly relate to the misdiagnosis. *See, e.g., Glenn v. Prestegord*, 456 S.W.2d 901, 902 (Tex.1970)(holding that there was no proximate cause where evidence failed to establish that patient's injury was caused by the physician's failure to pursue further evaluation of abdominal pain); *Lloyd v. Ray*, 606 S.W.2d 545, 547 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.)(reversing summary judgment where evidence showed defendant physician failed to discover intrauterine device in abdomen which caused medical expenses and pain and suffering); *Sullivan*

2. Prosser and Keeton's discussion of proximate cause includes this summary concerning the relationship between causation and legal responsibility:

In a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond. But any attempt to impose responsibility upon such a basis would result in infinite liability for all wrongful acts, and would 'set society on edge and fill the courts with endless litigation.' As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability. Some boundary must be set to liability for the consequences of any act, upon the basis of some social idea of justice or policy.

W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 42 at 264 (5th Ed.1984).

*v. Methodist Hospitals of Dallas,* 699 S.W.2d 265, 274 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.)(concluding that plaintiff had presented some evidence of mental anguish and physical suffering resulting from physician's failure to properly diagnose and inform her of presence of a sponge in her abdomen); *Rose v. Friddell,* 423 S.W.2d 658, 664 (Tex.Civ. App.—Tyler 1968, writ ref'd n.r.e.)(reversing directed verdict where evidence raised fact question as to whether physician negligently caused loss of circulation and contracture of patient's arm).

The foreseeable risk of harm created by a negligent misdiagnosis is that the plaintiff may sustain bodily injury. *See Speer v. United States,* 512 F.Supp. 670, 675 (N.D.Tex.1981)(holding that faulty diagnosis can form no basis for cause of action for medical malpractice because in and of itself it results in no damage; only when it leads to injurious delay in receiving proper treatment or leads to the administering of improper treatment that causes injury can a negligent diagnosis form the grounds for relief), *affirmed,* 675 F.2d 100 (5th Cir. 1982). Under existing precedent, Dr. Longoria would be liable for Wyatt's physical pain and suffering, and her mental anguish, if such injuries are proved to be the proximate result of his misdiagnosis. But the harm she complains of here is not the direct or immediate result from a physical injury sustained through an erroneous course of treatment or through the failure to treat at all. In short, her economic injuries are not within the type of harm which Dr. Longoria reasonably should have anticipated. Nor are we persuaded by Wyatt's argument that anyone would foresee that a patient would begin making plans for her demise after being informed that she has a terminal illness. The possible responses to a diagnosis of terminal illness are as varied as the patients who receive them. Dr. Longoria is not a financial planner or an estate planner. He has no control over how his patients choose to confront a life-threatening illness or how they decide to dispose of their property in anticipation of death.

In apportioning responsibility, we believe that the party who had superior knowledge of the risk involved in making the property dispositions and the power to control the probability of injury should be liable for the resulting harm. *See Graff v. Beard,* 858 S.W.2d 918, 920 (Tex.1993)(holding that party with superior knowledge or power to control the risk should bear responsibility for resulting harm). No matter how optimistic we may be about the powers of modern science to diagnose and treat illness, predictions of life and death lack scientific certainty. With any diagnosis of terminal illness, there exists the possibility that death will not occur when and by the same means as predicted by a physician. Those diagnosed with a terminal illness must bear the responsibility of not only planning for their death, but also planning for the possibility of continued life.

Because Wyatt's property dispositions were not injuries which Dr. Longoria reasonably should have anticipated as a result of his alleged misdiagnosis, we perceive no genuine issue of material fact as to causation. Wyatt's third issue is overruled.

## CONCLUSION

We affirm the summary judgment as to Wyatt's economic losses predicated on her premature property dispositions. We reverse as to whether Dr. Longoria's alleged negligence caused Wyatt to suffer personal injuries and we remand to the trial court for proceedings consistent with this opinion.