COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 




 
 
  
 ROSA GARCIA,
  
                             Appellant,
  
 v.
  
 LEVI STRAUSS
 & CO.,
  
                             Appellee.
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
 
 
  
 No. 08-01-00317-CV
  
 Appeal from
  
 County Court at Law No. 3
  
 of El Paso County, Texas
  
 (TC# 99-1677)
  
 
 




 

O
P I N I O N

Rosa Garcia appeals the trial court=s summary judgment dismissing her
discrimination claims against her employer Levi Strauss & Co. under Tex. Lab. Code Ann. ' 451.001.  We affirm.

Facts

Garcia has worked at Levi Strauss
since 1982.  During that time, she has
sustained three on-the-job injuries, the first in 1988, the second in 1991, and
the third in 1995.  In accordance with
Levi Strauss policy, Garcia filed workers= compensation claims concerning these
injuries.








Garcia was making $11.27 an hour
immediately before she went on medical leave for her 1991 injury.  When she returned to work approximately two
years later, the company reduced her pay to $4.71 an hour, pursuant to its
inactive status policy.  The policy provides
that Athe maximum length of any medical
leave of absence is 12 months.@  Nevertheless,
employees with Acertain types of disabilities . . . may qualify for >inactive status= after expiration of 12 months on
medical leave of absence.@  Employees on inactive
status are still considered employees of Levi Strauss, so long as they comply
with certain requirements.

Once placed on inactive status, the
employee must continue to provide Levi Strauss with medical reports from a
treating physician every three months. 
If the employee fails to report to Levi Strauss on this basis, the
inactive status is lost and the company considers the employee to have
voluntarily quit.  Employees on inactive
status do not Acontinue to accrue company benefits
or seniority.@








Included in Levi Strauss=s summary judgment evidence is a
document entitled AEmployee=s Benefit Rights During Inactive
Status.@ 
The document details the effect of inactive status on life insurance,
accidental death and dismemberment insurance, medical coverage, disability
coverage, pension plans, and profit sharing awards.  Insurance coverage essentially ceases when an
employee=s inactive status begins.  Any employee vested in the company=s pension plan at the time inactive
status begins continues to be vested, but those who do not meet the definition
of Avested@ at the time inactive status begins
lose any benefits earned to that date. 
The document is silent as to any reduction of wage rates accrued once
inactive status is taken.

Following her return to work from the
1991 injury, Garcia was told by one supervisor that all injured workers were Astupid and illiterate.@ 
In September 1998, another supervisor called her a Aproblem operator,@ who Awasn=t going to last@ and Awas going to be out of there really
fast@ after being warned of allegedly
inappropriate behavior.  According to
Garcia, the 1998 reprimand was not warranted because another supervisor had
authorized the actions for which she was reprimanded.  Garcia contends she was subjected to public
ridicule at the time of the incident because management asked to see her time
card over Levi=s public address system.  Specifically, she was jeered by some of her
co-workers after that announcement, an action which indicated to her that she
was being accused of stealing time from the company.

Following her return to work in 1995,
Garcia maintained that employees were told that if they did not change in
accordance with new company policies concerning injured workers, they Aknew where the door was.@ 
She was also told by a supervisor that Athe injured workers considered Levi
Strauss to be the chicken with the golden eggs.@ 
Garcia complained to upper management about these comments in 1996.  The record does not indicate what action, if
any, Levi Strauss took concerning these reports.  Garcia did not report any further incidents.








Garcia contends her salary reduction
to minimum wage in 1995, along with hostile treatment by other company
employees, constituted discrimination prohibited under Tex. Lab. Code Ann. ' 451.001.  The company counters that her loss of pay was
the result of a legitimate business policy, and no cause of action for
harassment exists under section 451.001.[1]

The trial court granted summary
judgment for Levi Strauss on all Garcia=s claims.  Garcia timely appealed.

Standard
of Review








In reviewing a traditional summary
judgment proceeding, we determine whether the successful movant
at trial sustained its burden of showing that no genuine issue of material fact
exists such that judgment should be granted as a matter of law.  Olson v. Estate of Watson, 52 S.W.3d
865, 868 (Tex. App.--El Paso 2001, no pet.); Wyatt v. Longoria, 33
S.W.3d 26, 31 (Tex. App.‑‑El Paso 2000, no pet.); see Tex. R. Civ. P. 166a.[2]  The question on appeal, therefore, is not
whether the summary judgment proof raises fact issues as to required elements
of the movant=s cause or claim, but whether the
summary judgment proof establishes that no genuine issue of material fact as to
one or more elements of the movant=s cause or claim exists as a matter
of law.  Id.  In resolving the issue of whether the movant has carried this burden, all evidence favorable to
the non‑movant must be taken as true and all
reasonable inferences, including any doubts, must be resolved in the non‑movant=s favor.  Id.

Elements
of Section 451 Claim

Under section 451.001 of the Texas
Labor Code, an employer Amay not discharge or in any other manner discriminate against  an employee@ for filing a workers= compensation claim in good
faith.  Tex.
Lab. Code Ann. ' 451.001 (Vernon 1996).  There is no dispute in this case that Garcia
was never discharged.  This case
therefore concerns whether Levi Strauss discriminated against Garcia Ain any other manner@ because she filed a workers= compensation claim.








The purpose of section 451.001 is to
protect persons entitled to benefits under the Workers= Compensation Act by preventing them
from being discharged or otherwise discriminated against for filing claims to
recover those benefits.  Dallas Area
Rapid Transit v. Johnson, 50 S.W.3d 738, 740 (Tex. App.--Dallas 2001, no
pet.); see Trico Technologies Corp. v. Montiel, 949 S.W.2d 308, 312 (Tex. 1997).  To prevail on a section 451.001 claim, the
employee must demonstrate some causal link between the employer=s action and the fact of her workers= compensation claim, but section 451 causation does not require the employee to
demonstrate that she was discriminated against solely because of her workers= compensation claim.  Continental Coffee
Products Co. v. Cazarez, 937 S.W.2d 444, 451
(Tex. 1996).  Instead, she must
show that Abut for@ the filing of the claim, the
discharge would not have occurred when it did. 
Id.

ABut for@ causation may be established either by direct or circumstantial evidence and by
reasonable inferences that can be drawn from such evidence.  Investment Properties
Management, Inc. v. Montes, 821 S.W.2d 691, 694 (Tex. App.--El Paso 1991, no
writ); Paragon Hotel Corporation v. Ramirez, 783 S.W.2d 654, 658 (Tex.
App.--El Paso 1989, writ denied). 
In this regard, circumstantial evidence sufficient to establish a causal
link may include:

(1) knowledge
of the compensation claim by the person discriminating against her;

(2) expression
of a negative attitude toward the employee=s injured condition;

(3) failure
to adhere to established company policies;

(4) discriminatory
treatment in comparison to similarly situated employees; and

(5) evidence
that the reason for the discharge was false.

Cazarez, 937 S.W.2d at 451; Vallance v. Irving C.A.R.E.S., Inc., 14
S.W.3d 833, 837 (Tex. App.--Dallas 2000, no pet.); Urquidi
v. Phelps Dodge Refining Corp., 973 S.W.2d 400, 403-404 (Tex. App.--El Paso
1998, no writ).

The
Inactive Status Policy








In her first point of error, Garcia
urges she raised a fact question as to whether Levi Strauss used its inactive
status policy as a way to discriminate against her because of her workers= compensation claim.  Specifically, she claims that her return to
work at a lower rate of pay than that which she earned before her injury
constituted discrimination within the meaning of section 451.

There is no dispute that Garcia was
paid $4.71 an hour after she returned to work  from her 1991 work-related injury, and
that prior to leaving work because of that injury, she had been making $11.27
an hour.  Garcia claims this pay cut
constitutes discrimination against her because she filed a workers= compensation claim.  Levi Strauss, on the other hand, claims the
pay cut was instituted pursuant to its legitimate inactive status policy.  Levi Strauss further contends it was entitled
to summary judgment because Garcia=s own testimony conceded that this
policy required all employees on leave for over a year to lose all accumulated
benefits, including pay above starting level.








We analyze a section 451 claim
pursuant to the same burden-shifting framework used by the federal courts with
regard to Title VII and other anti-discrimination statutes.    The employee has the initial Aburden of establishing a causal link
between the firing and the employee=s claim for worker=s compensation benefits.@  Montes, 821 S.W.2d at 694; Terry v. Southern Floral
Co., 927 S.W.2d 254, 257 (Tex. App.--Houston
[1st Dist.] 1996, no writ). 
That burden is satisfied by a showing that Abut for@ the employee=s assertion of her workers= compensation claim, the employer=s allegedly discriminatory action
would not have occurred when it did.  Cazarez, 937 S.W.2d at 451.  Stated another way, the employee is not under
a burden to prove that her workers= compensation claim was the sole
cause of the employer=s allegedly discriminatory behavior.  Montes, 821 S.W.2d
at 694.

The prima facie burden on the
employee is not a heavy one, Garcia satisfied the requirements of her prima
facie case, and Levi Strauss acknowledges as much.  The burden then shifted to Levi Strauss to
demonstrate that its allegedly discriminatory actions were taken pursuant to a
non-discriminatory legitimate business policy. 
Terry, 927 S.W.2d at 258.  Levi Strauss urges that its inactive status
policy, the structure of its compensation system, and the language that A[w]hile on
inactive status, [an employee] will not continue to accrue company benefits or
seniority@ satisfied this burden.  We agree. 
The burden then shifted back to Garcia to create a genuine issue of
material fact rebutting Levi Strauss=s assertion that its policies were
not discriminatory. Id.

In attempting to satisfy this
requirement, Garcia urges only that her post-injury reduction in pay
constitutes Adirect evidence of arbitrary
compensation policies set by an employer to the damage and detriment of a
returning worker=s compensation claimant      
. . . .@ 
Whether Levi Strauss=s policy is arbitrary, however, does not resolve the
question.  Rather, we must determine
whether Garcia produced sufficient evidence to create a fact question as to
whether Levi Strauss used its inactive status policy to discriminate against
Garcia because she filed a workers= compensation claim.  We find no such evidence in this record.








Rather, Garcia=s own testimony reflects that at
least one other employee returning from inactive status did not receive a pay
cut even though his medical leave was due to a work-related injury.  Although this might be evidence of a poorly-administered
policy, we cannot see how it implies that Levi Strauss=s inactive status policy was a
pretext for discrimination against workers= compensation claimants.  We cannot say this evidence supports a fact
question that Garcia received discriminatory treatment, or that the proffered
reason for her pay cut was false.  Cazarez, 937 S.W.2d at 451;
Vallance, 14 S.W.3d at 837; Urquidi, 973 S.W.2d at 405.  We can find no other evidence in the record
regarding discriminatory application of the inactive policy status to workers= compensation claimants, and Garcia
points us to none.  She relies solely upon
the fact that her pay was reduced upon her return to work after a two-year
absence.  This does not raise a fact
question of discrimination for filing a workers= compensation claim.  Garcia=s point of error one is overruled.[3]

The
Hostile Environment Claim








In her second point of error, Garcia
claims she was subjected to a hostile work environment upon returning to work
after her 1991 work-related injury, and this constitutes a cause of action
under the Labor Code.  While
acknowledging that no Texas court has recognized this theory of recovery in the
section 451 context, Garcia nevertheless contends that a hostile work
environment constitutes behavior prohibited within the meaning of its Ain any other manner discriminate@ language.  We agree.








At least three Texas courts have
opined that discrimination under section 451.001 can include employer action
short of termination.  Castro v. U.S.
Natural Resources, Inc., 880 S.W.2d 62, 65 (Tex. App.--San Antonio 1994,
writ denied) (employee placed on indefinite leave without pay when he attempted
to return to work following an on-the-job injury for which he filed a workers= compensation claim); Southwestern
Electric Power Company v. Martin, 844 S.W.2d 229, 232 (Tex. App.--Texarkana
1992, writ denied) (change in employment status short of discharge can
constitute discrimination within meaning of section 451); see Western Atlas
International, Inc. v. Wilson, 930 S.W.2d 782, 787 n.1 (Tex. App.--Tyler
1996, writ denied) (A[t]he statute contemplates any manner of discrimination
including discharge@).  Moreover, both
Texas and federal law recognize that an employer can Adiscriminate@ against an employee by creating, or
permitting the creation or maintenance of, a hostile work environment because
of that employee=s sex, race, religion, color, national origin, or
disability.  Dillard
Department Stores, Inc. v. Gonzales, 72 S.W.3d 398, 406 (Tex. App.--El Paso
2002, pet. ref=d).  We believe this reasoning applies equally to
the prohibition on otherwise discriminating against workers= compensation claimants.  We thus hold that a hostile work environment
can, under the right set of circumstances, constitute Aother discrimination@ within the meaning of section
451.  We analyze Garcia=s claims accordingly.

Extrapolating from other
discrimination law, to establish its right to summary judgment on Garcia=s claim of a hostile work
environment, Levi Strauss must conclusively negate at least one of these five
elements:  (1) that Garcia belongs to a protected
group; (2) that she was subjected to unwelcome harassment; (3) that the
harassment was based on her having filed a workers= compensation claim; (4) that the
harassment affected a term, condition, or privilege of her employment; or (5)
that her employer knew, or should have known, of the harassment and failed to
take prompt remedial action.  Skidmore v. Precision Printing and Packaging, Inc., 188 F.3d
606, 615 (5th Cir. 1999); Jones v. Flagship International, 793 F.2d 714,
719-20 (5th Cir. 1986); Dillard, 72 S.W.3d at 407.  If fact questions exist on each of these
elements, summary judgment was not warranted.








Taken in the light most favorable to
Garcia, the record reflects the following evidence.  Levi Strauss=s nurse told her she looked like Aan animal@ (the context of this remark is not
clear).  On one occasion, a supervisor
called her and other injured workers Astupid and illiterate.@ 
On another occasion, a supervisor said that the plant would close
because of injured workers.  At a meeting
between managers and employees, they were told that conditions in the plant
were going to change and that if the employee=s did not like it they Aknew where the door was.@ 
Garcia understood these comments to be directed at injured workers.  Another Levi Strauss manager said injured
workers considered Levi Ato be the chicken with the golden eggs.@ 
A company manager asked other operators to make incident reports about
Garcia and said, ARosa won=t last long here.  She is going to leave very quickly.@ 
After she complained to higher management, however, the incident reports
were removed from her personnel file and she was reimbursed for her three-day
suspension.  Lastly, Garcia testified she
was unfairly treated with regard to a buy-out offer made to certain Levi
Strauss employees, but she did ultimately receive the buy-out, and she knew of
at least two employees with workers= compensation claims who received
their buy-outs without problems.

To rise to an actionable level, a
hostile environment must be Aboth objectively and subjectively offensive, one that a
reasonable person would find hostile or abusive, and one that the victim in
fact did perceive to be so.@  Faragher v. City of Boca
Raton, 524 U.S. 775, 787, 118 S.Ct. 2275, 2283,
141 L.Ed.2d 662 (1998).  The
Supreme Court has made it clear Athat conduct must be extreme to
amount to a change in the terms and conditions of employment . . . .@ 
Id. at 788, 118 S.Ct. at 2284.  The Supreme Court has held that A>simple teasing=, offhand comments, and isolated
incidents unless extremely serious will not amount to discriminatory changes in
the >terms and conditions of employment.=@ 
Id. at 788, 118 S.Ct. at 2283; Shepherd
v. Comptroller of Public Accounts, 168 F.3d 871, 874 (5th Cir. 1999).  A hostile work environment is one Aso severe and pervasive that it
destroys a protected classmember=s opportunity to succeed in the
workplace.@ 
Shepherd, 168 F.3d at 874.








 To be sufficiently severe or pervasive, the
conduct must be Aextensive, longlasting, unredressed, and uninhibited@ and Apermeate the plaintiffs= work environment.@ 
Indest v. Freeman Decorating, Inc., 164 F.3d 258, 264 (5th Cir.
1999).  Conduct that is not severe
enough to create a work environment that a reasonable person would find hostile
or abusive will not trigger a hostile environment claim.  Harris v. Forklift Sys.,
Inc., 510 U.S. 17, 21-22, 114 S.Ct. 367, 370-71,
126 L.Ed.2d 295 (1993); Garcia v. Schwab, 967 S.W.2d 883, 885 (Tex.
App.--Corpus Christi 1998, no pet.). Whether an environment is Ahostile@ or Aabusive@ can be determined only by reviewing
all the circumstances, which may include the frequency of the conduct, its
severity, whether it is physically threatening or humiliating or a mere
offensive utterance, and whether it unreasonably interferes with an employee=s work performance.  Harris, 510 U.S. at
23, 114 S.Ct. at 371; Garcia, 967 S.W.2d at
885-86; Faragher, 524 U.S. at 787-88,
118 S.Ct. at 2283.








While Garcia=s testimony demonstrates several
unfriendly incidents related to her status as a workers= compensation claimant, the evidence
as a whole does not create a genuine issue of material fact as to whether Levi
Strauss=s conduct was so severe and pervasive
that it destroyed her ability to succeed in the workplace.  See Dillard, 72 S.W.3d at 407
(cumulative effect of offensive behavior bears on determination of work
environment, single incidents need not be viewed in isolation).  We hold that Levi Strauss has conclusively
negated the fourth element of a hostile environment claim, that the harassment
affect a term, condition, or privilege of employment.  Garcia=s second point of error is overruled.

Conclusion

The trial court=s grant of summary judgment is
affirmed.

 

                                                                        


SUSAN
LARSEN, Justice

August 1, 2002

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Publish)











[1]In
her pleadings, Garcia also claimed discrimination stemming from her forced
participation in Levi Strauss=s
re-entry program for employees who had taken leave for job-related
injuries.  In her deposition, however,
Garcia acknowledged that she never participated in the re-entry program, nor
has she brought any claims regarding the re-entry program on appeal.





[2]Garcia
contends the trial court erred in granting Levi Strauss=s
Ano evidence motion.@ 
The record contains only a Atraditional@ motion for summary judgment filed
pursuant to Rule 166a, not a Rule 166a(i) Ano
evidence@ motion
for summary judgment.  We therefore
review the trial court=s
decision solely pursuant to the standards for a Rule 166a motion.  Compare Tex. R. Civ. P. 166a with
Tex. R. Civ. P. 166a(i).





[3]Garcia
also challenges Levi Strauss=s
contention on summary judgment that the reduction in pay did not constitute an Aadverse employment action@ within the meaning of section
451.  We need not reach that
question.  We note, however, that federal
decisions do hold that a reduction in pay can constitute an Aadverse employment action@ within the meaning of the Title VII
and other anti-discrimination statutes.  Dollis v. Rubin, 77 F.3d 777, 782 (5th Cir. 1995).