COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

FERNANDO CHAVEZ,
Individually and              )

CECILIA
LOPEZ, His Wife, Individually,              )              
No.  08-02-00332-CV

                                                                              )

Appellants,                         )                    Appeal from the

                                                                              )

v.                                                                           )                
168th District Court

                                                                              )

MEDTRONIC, INC.,                                           )           
of El Paso County, Texas

                                                                              )

Appellee.                           )                    (TC# 98-4314)

                                                                              )

 

 

MEMORANDUM  OPINION

 

Fernando Chavez
and his wife, Cecilia Lopez, appeal a summary judgment in favor of Medtronic,
Inc. (AMedtronic@). 
On appeal, they raise four issues, arguing that the trial court erred in
granting summary judgment in favor of Medtronic.  We affirm.








In September 1990,
Mr. Chavez suffered a work-related back injury. 
He was initially diagnosed with a bulging disc at L-4 and L-5 in his
lower back.  After unsuccessful conservative
treatment, Mr. Chavez was referred to Dr. Teegarden
who in March 24, 1994, diagnosed him with lumbar facet arthritis and arthralgia. Dr. Teegarden
provided Mr. Chavez with a series of injections as treatment to relieve his
back pain, but Mr. Chavez did not respond well to this treatment and the back
pain persisted.  Dr. Teegarden
suggested implanting a spinal cord stimulation system (Amedical
device@)
manufactured by Medtronic into Mr. Chavez=s
spine to relieve the pain.  Mr. Chavez
was provided with a brochure detailing how the medical device worked.  On June 6, 1994, Dr. Teegarden
implanted the medical device in Mr. Chavez=s
back.  The medical device provided Mr.
Chavez with approximately nine months of pain relief.

In March 13, 1995,
Mr. Chavez visited Dr. Teegarden and complained that
the medical device was not working.  In
his medical report dated March 13, 1995, Dr. Teegarden
noted that the epidural quad plus lead on the device had been fractured as a
result of Mr. Chavez=s
seizures.  Mr. Chavez had complained of
suffering seizures during the three weeks prior to the above office visit with
Dr. Teegarden of March 13, 1995.  It was later determined that Mr. Chavez had a
large tumor on the right frontal parietal region of his brain.  On July 28, 1995, Dr. Luis Vasquez performed
surgery on Mr. Chavez and successfully removed the tumor.  On June 7, 1996, Dr. Karl Andrew Goler performed surgery and removed the medical device from
Mr. Chavez=s back.

On December 15,
1998, Appellants filed this lawsuit. 
Appellants sought money damages from Medtronic alleging six causes of
action:  (1) strict liability; (2) breach
of warranty; (3) fraud; (4) misrepresentation; (5) corporate negligence; and
(6) negligence/res ipsa
loquitur.  Appellants=
original petition named Medtronic and Dr. Teegarden
as defendants.[1]

On February 1,
1999, Medtronic filed an original answer in which it claimed that Appellants
were barred from bringing their claims by the applicable statute of
limitations.  On June 15, 2000, Medtronic
filed a motion for summary judgment on limitation grounds and 








no-evidence
grounds.  In their response to Medtronic=s motion, Appellants argued for the
first time the unsound mind tolling provision to Medtronic=s statute of limitations claim.  Specifically, Appellants argued that A[a]lthough
[Appellants] do not contend that the brain tumor and brain surgery were caused
by the [medical device], evidence of [Mr. Chavez=s]
seizure disorder, large brain tumor and post-operative diagnosis goes to the
issue of tolling the limitations period because of his unsound mind/mental capacity.@ 
Appellants asserted that the summary judgment evidence showed there were
genuine issues of fact regarding the challenged claims of defect and
injury.  Appellants, as summary judgment,
evidence included the following:  (1) Dr.
Goler=s
operative note for 6/7/96 surgery for Fernando Chavez; (2) Medtronic Implanted
Device Identification Card; (3) Dr. Teegarden=s operative note for 6/6/94 surgery for
Fernando Chavez; (4) Dr. Teegarden=s medical reports of 3/13/95 and
3/21/95; (5) Affidavit of Plaintiff Fernando Chavez; (6) Medtronic Patient
Brochure on spinal cord stimulation; (7) Dr. Teegarden=s deposition excerpts; (8) Dr. Boris Kaim Discharge Summary for 7/28/95 surgery; (9) Dr. Luis
Vasquez=
operative report for 7/28/95 surgery; (10) Affidavit of Plaintiff, Cecilia
Lopez; (11) Dr. Kenyon Behrens=
medical report dated 6/1/98; and (12) Affidavit of Dr. Charles Marable, M.D., Plaintiff=s
expert.

On September 27,
2001, Medtronic submitted a reply to Appellants=
response to its motion and asserted that Appellants waived the unsound mind
provision because they failed to plead it and that even if Appellants had not
failed to plead the avoidance, they failed to produce
any evidence as to raise a fact question on its application in this case.  In addition, Medtronic alleged that
Appellants failed to produce evidence raising a fact issue regarding their
elements of fraud or misrepresentation claims. 
On November 8, 2001, the trial court granted summary judgment in favor
of Medtronic without stating the grounds. 









On December 10,
2001, Appellants filed a motion for new trial to set aside the trial court=s summary judgment order.  In their motion, Appellants raised four
points of error, asserting that the trial court erred in granting summary
judgment because:  (1) avoidance to the
statute of limitations may be raised by an answer, motion or other responsive
writing filed in the suit; (2) a genuine issue of fact existed regarding Mr.
Chavez=s unsound
mind and whether it tolled the statute of limitations; (3) a genuine issue of
fact existed with regard to the claim of defect; and (4) more than a scintilla
of evidence exists showing Mr. Chavez suffered pain and injury as a result of
the medical device.

In its response to
Appellants= motion
for new trial, Medtronic again asserted that the unsound mind avoidance had
been improperly pled and that even if properly pled, it would only apply to Mr.
Chavez, not to Ms. Lopez.  Medtronic also
asserted that Appellants failed to produce any evidence raising a material
issue of fact as to all their alleged claims except strict liability, and that
the evidence produced to support that claim was incompetent.  On January 23, 2002, the trial court granted
Appellants= motion
for new trial and vacated the summary judgment rendered in Medtronic=s favor.  








Medtronic filed a
motion for reconsideration or alternative partial reconsideration of the order
granting new trial on February 21, 2002. 
In its motion, Medtronic asserted Appellants waived the unsound mind
tolling provision because they failed to properly plead it.  In the alternative, Medtronic asked the court
to reinstate the summary judgment order with regard to all the claims, except
the strict liability claims.  On March
22, 2002, Appellants submitted an opposition and response to Medtronic=s motion to which Medtronic filed a
response.  On April 23, 2002, the
trial court granted Medtronic=s
motion for reconsideration and reinstated the order granting summary judgment
in favor of Medtronic.  On May 23, 2002,
Appellants filed another motion for new trial, asserting the same points of
error raised in their December 10, 2001 motion for new trial.  Appellants=
had asserted the same points of error raised in their December 10, 2001 motion
for new trial.  Appellants
motion was apparently overruled by operation of law. Appellants now timely
appeal the trial court=s
summary judgment order.

DISCUSSION

On appeal,
Appellants raise four issues, arguing that the trial court erroneously granted
Medtronic=s
limitations and its no evidence motion for summary judgment:  (1) if it did so on the basis that avoidance
of the statute of limitations must be raised affirmatively by the pleadings
either in the original petition or in an amended petition; (2) because there is
a genuine issue of material fact concerning Mr. Chavez=s
unsound mind/mental incapacity and whether Mr. Chavez=s mental status tolled the limitation
period; (3) because there is more than a scintilla of evidence that Appellee=s
medical device was defective, unsafe, ineffective, and unreasonably dangerous;
and (4) because there is more than a scintilla of evidence in the summary
judgment record that Mr. Chavez suffered pain and injury as a result of the Appellee=s
medical device.

In its reply
brief, Medtronic contends that the trial court properly granted summary
judgment because the limitations period has expired for all Appellants= six claims.  Further, Medtronic asserts Appellants= reliance on the unsound mind provision
to toll the limitations period was not properly pled and was therefore
waived.  Medtronic also asserts that
Appellants failed to produce summary judgment evidence proving that Mr. Chavez
was of unsound mind, that the medical device was defective or unreasonably
dangerous, or that Mr. Chavez suffered an injury as a result of a defective
medical device.

 








Standard
of Review

The standard of
review on appeal of a traditional summary judgment is whether the successful movant at the trial level carried the burden of showing
that there is no genuine issue of material fact and that a judgment should be
granted as a matter of law.  KPMG Peat Marwick v. Harrison County Hous.
Fin. Corp., 988 S.W.2d 746,
748 (Tex. 1999); Wyatt v. Longoria, 33
S.W.3d 26, 31 (Tex.App.--El Paso 2000, no pet.).  Thus, the question on appeal is not whether
the summary judgment proof raises a fact issue as to required elements of the movant=s
cause or claim, but whether the summary judgment proof establishes, as a matter
of law, that there is no genuine issue of material fact as to one or more
elements of the movant=s
cause or claim.  Wyatt,
33 S.W.3d at 31; Duran v. Furr=s Supermarkets, Inc., 921 S.W.2d
778, 784 (Tex.App.--El Paso 1996, writ denied).  In reviewing the evidence, we take as true
all evidence favorable to the nonmovant, and we make
all reasonable inferences and resolve any doubts, in the nonmovant=s favor.  KPMG, 988 S.W.2d at
748; Duran, 921 S.W.2d at 784.








A no‑evidence
summary judgment is essentially a pretrial directed verdict, and we apply the
same legal sufficiency standard in reviewing a no‑evidence summary
judgment as we apply in reviewing a directed verdict.  Wyatt, 33 S.W.3d at
31; Moore v. K-Mart Corp., 981 S.W.2d 266, 269 (Tex.App.--San
Antonio 1998, pet. denied).  We
review the evidence in the light most favorable to the respondent against whom
the no-evidence summary judgment was rendered, disregarding all contrary
evidence and inferences.  Wyatt, 33 S.W.3d at 31; Merrell Dow Pharmaceuticals, Inc.
v. Havner, 953 S.W.2d 706, 711 (Tex. 1997).  A no-evidence summary judgment is improperly granted
if the respondent brings forth more than a scintilla of probative evidence to
raise a genuine issue of material fact.  Wyatt,
33 S.W.3d at 31; See Tex.R.Civ.P. 
166(a)(i).  Less than a scintilla of evidence exists when
the evidence is Aso weak
as to do no more than create a mere surmise or suspicion@
of a fact.  Wyatt, 33 S.W.3d at
31; Ruiz v. Government Employees Ins. Co., 4 S.W.3d 838, 840 (Tex.App.--El Paso 1999, no pet.), citing Kindred
v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex.
1983).  More than a scintilla of evidence
exists when the evidence Arises
to a level that would enable reasonable and fair-minded people to differ in
their conclusions.@  Wyatt, 33 S.W.3d at
31; Havner, 953 S.W.2d at 711.  Where the trial court has granted summary
judgment without stating the grounds for doing so, as here ,
we must consider all grounds for judgment presented in the motion and affirm if
any has merit.  Weiner
v. Wasson, 900 S.W.2d 316, 317 (Tex. 1995).

Unsound
Mind

In Issue Two,
Appellants argue that the trial court erred in granting summary judgment in
favor of Appellee because there is a genuine issue of
material fact concerning Mr. Chavez=s
unsound mind/mental capacity and whether Mr. Chavez=s
mental status tolled the limitations period. 
Appellee urges that Appellants failed to bring
forth competent evidence to show that Mr. Chavez was of unsound mind at
the time his cause of action accrued.








An Aunsound mind@
tolls the statute of limitations.  Grace
v. Colorito, 4 S.W.3d 765, 769 (Tex.App.--Austin 1999, pet. denied); See Tex.Civ.Prac.&Rem.Code Ann. '16.001
(Vernon 2002).  The limitations period is
tolled for persons of unsound minds for two reasons:  first, to protect persons without access to
the courts; and second, to protect persons who are unable to participate in
control, or understand the progression and disposition of their lawsuit.  Hargraves v. Armco Foods, Inc., 894 S.W.2d 546, 548 (Tex.App.--Austin 1995, no writ); Grace, 4 S.W.3d at
769.  To prevent summary judgment
on an unsound-mind theory, the non-movant must
produce specific evidence that would enable the trial court to conclude that he
or she did not have the mental capacity to pursue litigation for a definite
period of time, or must produce a fact-based expert opinion to testify to that
effect.  Grace, 4
S.W.3d at 769.

To establish Mr.
Chavez=s unsound
mind, Appellants rely on Mr. Chavez=s
affidavit, Ms. Lopez=s
affidavit, and the medical records of Dr. Teegarden,
Dr. Boris Kaim, Dr. Vasquez, and Dr. Kenyon Behrens.

The following are
excerpts from Mr. Chavez=s
affidavit regarding his mental disability:

The medical report of Dr. Teegarden . . . confirms that I began having seizures in
March of 1995.  With those seizures, I
would lose consciousness, fall and usually hit my head, and suffer loss of
memory and confusion.

 

                                                              .               .               .

 

Although Dr. Vasquez took out my big
brain tumor, I continued to suffer from seizures throughout 1995, 1996, 1997
and most of 1998.

 

                                                              .               .               .

 

Although I do not contend that my big
brain tumor and brain surgery were caused by the Medtronic medical device in my
back, I did suffer from a mental disability and unsound mind during this
period, from the time of my initial seizures in March of 1995 until the fall of
1998.

 

During that period of time, I was
substantially unable to provide food, clothing or shelter for myself, or to
care for myself.  My spouse, Cecilia
Lopez, provided food, clothing, and shelter for me and cared for me.

 

Moreover, from March of 1995 until the
fall of 1998, I could not manage my own financial affairs, and I would often
suffer from memory loss, loss of consciousness and a blow to my head when I
fell following one of my seizures.  I had
a lot of closed head injuries.

 

                                                              .               .               .

 








During that period of time from March
of 1995 until the fall of 1998, my mental disability and unsound mind, caused me to have confusion, memory loss, poor
coherence and poor judgment.  I often became
argumentative and aggressive toward those medical care providers who were
trying to treat me and help me, as well as toward my spouse.

 

                                                              .               .               .

 

Finally, during that period of time, I
would also leave home, for several months at a time, and wander around El Paso
County.  To date, I have no recollection
of where I went or what I did.  One time
I ended in Los Angeles, California, not knowing how I got there, and had to
have a bus ticket sent to me to return home. 


 

Ms. Lopez=s
affidavit is almost identical to that of Mr. Chavez.  Ms. Lopez states:

 

Although Dr. Vasquez took out [Mr.
Chavez=] brain
tumor, I observed that [Mr. Chavez] appeared to continue to suffer from
seizures throughout 1995, 1996, 1997 and most of 1998.  He was diagnosed as having a seizure
disorder.

 

Throughout that period, I observed that
[Mr. Chavez] would appear to suffer a seizure, usually lose consciousness, fall
and hit his head, then suffer memory loss and
confusion.

 

I observed some seizures in which [Mr.
Chavez] did not appear to lose consciousness, but the left side of his body
would become weakened, causing his legs to collapse, resulting in a fall in
which he often hit his head before anyone could get over to help him.

 

Ms. Lopez also testified in her
affidavit as to Mr. Chavez=s
memory loss, poor coherence and poor judgment, and to his going to California
without knowing how or why he had gone.

The medical record
from Dr. Teegarden=s
office visit on March 20, 1995 states the following:

[Mr. Chavez] states
he is well controlled, seizure free, since 03/13/95, when Dilantin
therapy was instituted after talking to the neurologist Dr. Robert Schneider
and medication has been continued since that time to present.  The seizure activity appeared at that time to
be petitmal type with good control with Dilantin therapy . . . .

 

Dr. Teegarden
stated that Mr. Chavez=s
prognosis was Agood.@ 









Additionally, a
discharge summary prepared by Dr. Boris Kaim for the
hospital stay of Mr. Chavez from July 15, 1995 to August 2, 1995, states the
following:

At the time of admission, the neurologic examination was normal except for that the
patient had some difficulty walking with the left lower extremity because of
pain.

                                                               .              .              .

 

By August 1, 1995, the patient was
doing much better.  He was alert and
calm.  His speech was normal.  He was friendly.  There was a minimal, almost insignificant weakness
in the left lower extremity.  No further
seizures.

 

Mr. Chavez was discharged and given
Dilantin, the same medication prescribed by Dr. Teegarden to control his seizures.  The report also states that on July 19, 1995,
Mr. Chavez told the nurse that he had been using drugs and alcohol for the past
six years after denying to Dr. Kaim the use of
drugs.

On the discharge
summary for a hospital stay from May 21, 1998 to May 28, 1998, Dr. Kenyon
Behrens states that Mr Chavez complained of weakness
in the left side associated with nausea, vomiting, back pain, left-sided
weakness, and numbness.  Mr. Chavez
stated he fell and had a closed head injury. 
In addition, Mr. Chavez tested positive for cocaine and cannabinoids.  Mr.
Chavez became totally asymptomatic and was neurologically intact.  He was discharged and reffered
to a rehabilitation program.  








In considering
whether there was evidence tending to establish Mr. Chavez=s mental incapacity, we find that
Appellants failed to produce any evidence that created a fact issue as to
whether Mr. Chavez was of unsound mind. 
Appellants rely solely on Mr. Chavez=s
and Ms. Lopez=s
affidavits to show Mr. Chavez=s
mental disability.  Mr. Chavez=s and Ms. Lopez=s
statements that Mr. Chavez was of unsound mind are legal conclusions that are
insufficient to raise an issue of fact.  See
Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex.
1984).  The medical records, however, do
not indicate that Mr. Chavez was of unsound mind during his doctor=s office visits or short-term stays in
the hospital.  Rather, the medical
records indicate that Mr. Chavez=s
seizures were controlled by medication. 
Nowhere in the medical records does any doctor make any reference to Mr.
Chavez=s alleged
unsound mind.  Instead, Mr. Chavez was
able to make decisions regarding his health as is shown by his decision to
undergo brain surgery and the removal of the medical device in his back.  Viewing the evidence in the light most
favorable to Appellants, and disregarding all contrary evidence and inferences,
we hold that there is less than a scintilla of evidence as to whether Mr.
Chavez was of unsound mind.  See Wyatt,
33 S.W.3d at 31. 
The evidence provided by Appellants Acreate[s] a mere surmise or suspicion@
of fact.  See Wyatt, 33 S.W.3d at 31.  The
evidence does not support the claim that because Mr. Chavez suffered from
a seizure disorder, Appellants were unable to participate and control a lawsuit
within the appropriate limitations period. 
See Hargraves, 894
S.W.2d at 548; Grace, 4 S.W.3d at 769.  We find that in reviewing the summary
judgment evidence, Appellants failed to produce specific evidence that would
enable a court to conclude that Mr. Chavez did not have the mental capability
to pursue litigation during the limitations period.  See Grace, 4 S.W.3d
at 769.  Issue Two is overruled.

Issue Two is dispositive and we do not reach the Appellants= remaining issues.  We hold that the trial court properly
rendered summary judgment.  See Wyatt,
33 S.W.3d at 31; Tex.R.Civ.P. 166(a)(i).  We affirm the
judgment of the trial court.

 

February
19, 2004

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.











[1]
On September 12, 2001, Dr. Teegarden was dismissed
from the lawsuit.