**Joyceline MILLS, Appellant,**

v.

**Dr. John PATE, M.D., Appellee.**

**No. 08–04–00335–CV.**

Court of Appeals of Texas, El Paso.

June 1, 2006.

Carlos Eduardo Cardenas, El Paso, for appellant.

John P. Mobbs, Larry W. Hicks, Hicks & Lucky, P.C., El Paso, for appellee.

Before BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

DAVID WELLINGTON CHEW, Justice.

Appellant Joyceline Mills appeals the trial court's order granting of the motions for summary judgment in favor of Appellee Dr. John Pate, M.D. On appeal, Ms. Mills contends that the trial court erred in granting Dr. Pate's traditional and no-evidence motions for summary judgment and erred in overruling her objection to Dr. Pate's no-evidence motion as general and conclusory. We affirm in part, reverse in part, and remand the cause to the trial court.

In 1999, Ms. Mills decided that she wanted to have liposuction performed. After hearing Dr. Pate's radio advertising that he was board certified, an expert in liposuction, and could change one's life, Ms. Mills made an appointment with him. Her first consultation with Dr. Pate was on September 29, 1999. She was forty-six years' old at the time. Ms. Mills told Dr. Pate that she wanted to remove the fat bulges she had on her abdomen, hips, and thighs. Ms. Mills recalled that Dr. Pate told her she was going to be beautiful after having liposuction, which to her meant smooth skin and no "pooches." When he told her she would be beautiful, they were discussing the bags and sags being gone. Dr. Pate's staff showed her post-procedure photographs of other patients and she observed that they had smooth skin and no saddlebags. Dr. Pate told Ms. Mills that all the little bulges and sags in her skin would be taken care of through the liposuction procedure. With regard to her skin tone, she was told that she had beautiful or wonderful skin.

According to Dr. Pate's examination notes from the first office visit, he explained the liposuction technique, the incisions, risks, and complications of surgery and anesthesia. The notes also indicate that he explained to her that long-term results may require a small crescent tuck to the abdomen or medial thigh lift because her skin tone was only fair. Ms. Mills was also allegedly told that the quality of her skin would not change after liposuction and that irregularities frequently occur.

Ms. Mills, however, stated that Dr. Pate never told her about any kind of possible risks of the procedure, although he did give her a brochure to read and sign, which she did. According to Ms. Mills, Dr. Pate never told her about the potential need for further procedures, never told her that there might be rippling or other irregularities to her skin following liposuction, and never discussed any possible adverse effects with her. Specifically, she was never told that because of her age and her history of smoking, that she could have sagging skin or ripples.

On November 17, 1999, Ms. Mills signed an informed consent form and a permission to perform surgery form. In the treatment section, the informed consent form states:

> Usually, only one treatment is necessary to improve body contours to both my satisfaction, as well as the patient's satisfaction. In 4 or 5% of my patients (4 or 5 of every 100), a touch-up procedure following the surgery, usually after approximately 6 months, is necessary to maximize the cosmetic benefit. If this touch-up procedure is done at the Surgical Center I do not charge the patient for the touch-up procedure, however the Surgical Center does charge for this procedure, and there may be further anesthetic charges as well.

The consent form listed the following possible side effects from the liposuction procedure: discomfort, bruising, pigment change, scarring, swelling for up to six months. The form also warned of possible serious complications from the surgery. Dr. Pate conceded that the consent form does not tell the patient that the quality of her skin will not change and that she may have ripples, indentations, or abdominal abnormalities after liposuction.

On December 2, 1999, Dr. Pate performed his first liposuction procedure on Ms. Mills, which consisted of surgery on her abdomen, hips, flanks, and thighs. The evidence supports a reasonable inference that Ms. Mills was charged for the first surgery. Ms. Mills followed all of Dr. Pate's post-operative instructions. Ms. Mills expected swelling post-operatively based on what Dr. Pate had told her. Ms. Mills noticed swelling as well as some bruising in the first week after the surgery. As the swelling subsided, three or four months after the procedure, she began to notice irregularities in her skin. Specifically, she had two distinct rolls under her right breast in the upper abdomen area and the skin on her thighs was sagging in the front and inside, down to her kneecaps.

Within six months of the first surgery, Ms. Mills began complaining to Dr. Pate's staff about the irregularities. She was told that it was swelling and was specifically told by Dr. Pate not to worry because the swelling would go away. After six months, it was becoming more apparent to her that the irregularities were not just swelling. At this point, Ms. Mills became unhappy with the results of the first liposuction procedure. When Ms. Mills expressed her concerns to Dr. Pate's staff, she was cautioned to express them very delicately to Dr. Pate or else he would not repair it. After the six-month period, Ms. Mills delicately mentioned to Dr. Pate that the irregularities, the abdominal rolls in particular, could no longer be swelling by that point in time and expressed her dissatisfaction to him. Dr. Pate told her, "[p]ay me to do a thigh lift and I'll touch it up." It was her understanding that Dr. Pate would perform a second surgery, consisting of a medial thigh lift and a touch-up on the liposuction, specifically the abdomen rolls and a bulge on her left hip. He would charge for the medial thigh lift and do the touch-up procedure free of charge.

Dr. Pate never told her prior to the first liposuction procedure that she might need a thigh lift, although Ms. Mills recalled that the disclosure mentioned it.

On January 9, 2001, Ms. Mills signed an informed consent form for the second surgery and on January 16, 2001, the day of surgery, Ms. Mills signed a form consenting to lower abdominal bilateral hip flank liposuction and the thigh lift. The January 16 consent form for the second surgery specifically disclosed the following risks: "dissatisfaction with cosmetic results . . . possible need of future revision to obtain improved results, poor wound healing, recurrence of the original condition, and uneven contour." It was Ms. Mills' understanding that the second liposuction was just touch-up work. Dr. Pate told her that the thigh lift would take care of the baggy/saggy skin. Again, Dr. Pate did not talk to her about any risks from the procedure and neither did his staff.

After the second surgery, Ms. Mills felt soreness in the abdomen and around the incision on her legs. Ms. Mills was unhappy with the second procedure, but again was told for several months that it was swelling, but it was not swelling. Ms. Mills noticed that she still had some bagging and sagging after the thigh lift. When Ms. Mills told Dr. Pate that the rolls had moved from her right side to her left, below her navel, she was told it was swelling, but they did not go away. She did not look the way Dr. Pate told her she would look after the second procedure. He had described smooth skin, no ripples, bulges, and bags, but there was definite bagging on her left thigh, rippling and a bulge on her left abdomen, and a bulge on her right thigh. Further, her hips were disproportionate.

Ms. Mills had her last appointment with Dr. Pate on August 30, 2001. At that time, Dr. Pate told Ms. Mills that she should have paid him to do a tummy tuck or abdominoplasty. He had never mentioned to her that she might need such a procedure; in fact, at the initial consultation, Dr. Pate had told her that he did not think she would need a tummy tuck.[1]

A month later, Ms. Mills went to see Dr. Miller, a plastic surgeon, who told her he could probably fix her complaints—the rippling in her abdomen and the unevenness in her thighs—with a minimum of three surgeries. Ms. Mills told Dr. Miller that she looked and felt horrible. Dr. Miller referred Ms. Mills to Dr. Gilliland in Houston because he specializes in body contouring and could provide her with better results. In her consultation with Dr. Gilliland a month later, he told her that it would take a body lift to correct the irregularities resulting from the liposuction procedures. A body lift or circumferential abdominoplasty is a much more extensive procedure than liposuction, which entails a circumferential incision around the body, leaving a bikini-line scar. Dr. Gilliland told Ms. Mills that Dr. Pate's care and treatment of her had been inadequate. Dr. Gilliland also told her that her post-operative care would be more extensive than Dr. Pate's.

Dr. Gilliland performed an abdominoplasty and body lift, which included redoing the thigh lift. Ms. Mills was satisfied with the results of Dr. Gilliland's work

---

1. In his deposition, Dr. Pate admitted that Ms. Mills had irregularities following the first surgery, however, he stated that they were what one would expect, rather than abnormalities. Dr. Pate did not charge Ms. Mills for the touch-up liposuction procedure. Dr. Pate agreed that he did the touch-up surgery because the first surgery left Ms. Mills with the complained-of irregularities. Dr. Pate admitted that Ms. Mills' pre-operative photographs by Dr. Gilliland showed a small irregularity in the left hip.

aside from the scar and was happy with the shape of her body. The rippling and the rolls were gone. Her thighs were slimmed and her abdomen was flattened and smooth. If she had achieved her present body shape after her first surgery with Dr. Pate, she would not have had any other procedures. Ms. Mills believed that it was the body shape that she could have had, had the liposuction been done properly. If she had known when she first consulted with Dr. Pate that a body lift was going to be required in order to achieve the results she wanted, she would not have had the procedure.

On January 23, 2002, Ms. Mills notified Dr. Pate of her intent to sue under the Medical Liability and Insurance Improvement Act ("the Act"). On January 23, 2003, Ms. Mills filed suit against Dr. Pate for medical malpractice. Specifically, Ms. Mills alleged that Dr. Pate was negligent by failing to properly warn and obtain her informed consent with respect to the probable outcome of the liposuction procedures and the need for future treatment and by causing and failing to correct the abdominal irregularities. Ms. Mills later amended her petition to include a breach of express warranty claim.

Dr. Pate filed a traditional motion for partial summary judgment with regard to Ms. Mills' consent claims to the December 1999 liposuction surgery, arguing that these claims were barred by the two-year statute of limitations contained in Section 10.01 of Article 4590i. Dr. Pate also filed an amended "no evidence" motion for partial summary judgment, alleging that there was no evidence to support the essential elements of Ms. Mills' remaining claims. The trial court overruled Ms. Mills' objection to the no-evidence motion as an improper general and conclusory motion. The trial court sustained all of Dr. Pate's objections to Ms. Mills' summary judg-

ment evidence from Dr. Gilliland's testimony with respect to the appropriate standard of care. The trial court in a final order granted both of Dr. Pate's motions for summary judgment. Ms. Mills now appeals the summary judgment as to her informed consent and breach of express warranty claims.

### Standards of Review

The trial court granted both a traditional motion for summary judgment and a "no-evidence" summary judgment. *See* Tex.R.Civ.P. 166a(c), (i). In a traditional summary judgment proceeding, the standard of review on appeal is whether the successful movant at the trial level carried the burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991); *Wyatt v. Longoria,* 33 S.W.3d 26, 31 (Tex.App.-El Paso 2000, no pet.). Thus, the question on appeal is not whether the summary judgment proof raises fact issues as to required elements of the movant's cause or claim, but whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more elements of the movant's cause or claim. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970); *Wyatt,* 33 S.W.3d at 31. In resolving the issue of whether the movant has carried this burden, all evidence favorable to the nonmovant must be taken as true and all reasonable inferences, including any doubts, must be resolved in the nonmovant's favor. *Nixon v. Mr. Property Mgmt. Co., Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985). A defendant moving for summary judgment on a statute of limitations affirmative defense must prove conclusively the bar of limitations. *See Jennings v. Burgess,* 917 S.W.2d 790, 793 (Tex.1996); *Zale Corp. v. Rosenbaum,* 520 S.W.2d 889, 891 (Tex.

1975). If the nonmovant asserts that a tolling provision applies, the movant must conclusively negate the tolling provision's application to show his or her entitlement to summary judgment. *See Zale Corp.*, 520 S.W.2d at 891.

A no-evidence summary judgment under Tex.R.Civ.P. 166a(i) is essentially a pretrial directed verdict, and a reviewing court applies the same legal sufficiency standard. *Wyatt*, 33 S.W.3d at 31. The party moving for summary judgment on this basis must specifically state the elements as to which there is no evidence. *See* Tex.R.Civ.P. 166a(i). The burden then shifts to the non-movant to produce evidence raising a fact issue on the challenged elements. *Id.* When reviewing a no-evidence summary judgment, the reviewing court views the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003). Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions. *Havner*, 953 S.W.2d at 711. In a case where the trial court's judgment does not specify the ground or grounds relied upon for its ruling, the summary judgment must be affirmed if any of the theories advanced is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

### Statute of Limitations

In her first issue, Ms. Mills contends that the trial court erred in granting Dr. Pate's traditional motion for summary judgment based on the statute of limitations because a genuine issue of material fact exists as to whether her injuries arose from a course of treatment rather than from a discrete occurrence. Further, Ms. Mills asserts that a fact issue exists as to whether Dr. Pate fraudulently concealed Ms. Mills' claims from her.

In his motion for summary judgment, Dr. Pate alleged that Ms. Mills' complaints relating to her consent to the December 2, 1999 liposuction surgery were barred by the two-year statute of limitations under the Act. Former Article 4590i, section 10.01 of the Texas Revised Civil Statutes governs this case because it was filed before September 1, 2003.[2] The former statute created an absolute two-year limitations period in which to file suit on health care liability claims. *See* former Tex.Rev. Civ.Stat. art. 4590i, § 10.01; *Kimball v. Brothers*, 741 S.W.2d 370, 372 (Tex.1987). Former Tex.Rev.Civ.Stat. art. 4590i, section 10.01, in pertinent part, provides:

Notwithstanding any other law, no health care liability claim may be com-

**2.** In 2003, the Legislature repealed the Act, effective September 1, 2003, and replaced it with Chapter 74 of the Civil Practices and Remedies Code. *See* Acts of 1977, 65th Leg., R.S., ch. 817, 1977 Tex.Gen.Laws 2039, 2039–2053, amended by Acts of 1993, 73rd Leg., R.S., ch. 625, § 3, 1993 Tex.Gen.Laws 2347, 2347–49, amended by Acts of 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex.Gen.Laws 985, 985–989 (former Tex.Rev.Civ.Stat. art. 4590i, § 1.01–16.02, the "Medical Liability and Insurance Improvement Act")(henceforth "former Tex.Rev.Civ.Stat. art. 4590i"), repealed by Acts of 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex.Gen.Laws 847, 884 (current version at Tex.Civ.Prac. & Rem.Code Ann. § 74.001 *et seq.* (Vernon 2005)(eff. Sept. 1, 2003)).

menced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed. . . .

TEX.REV.CIV.STAT. art. 4590i, § 10.01.

■■■■ Under Section 10.01, the statute of limitations begins to run on one of three possible dates: (1) the date of the occurrence of the breach or tort; (2) the last date of the relevant course of treatment; or (3) the date of the hospitalization. *Shah v. Moss,* 67 S.W.3d 836, 841 (Tex.2001). A plaintiff may not choose the most favorable date that falls within Section 10.01's three categories. *Id.* Rather, if the date the alleged tort occurred is ascertainable, limitations must begin on that date. *Id.; see also Earle v. Ratliff,* 998 S.W.2d 882, 886 (Tex.1999). Thus, if the date is ascertainable, further inquiry into the second and third categories is unnecessary. *Shah,* 67 S.W.3d at 841. If the date is not ascertainable, the plaintiff must establish a course of treatment for the alleged injury, in which the last treatment date becomes relevant to determining when limitations begins. *Id.* However, if the date of the alleged tort is ascertainable, limitations begins to run on the ascertainable date irrespective of whether the plaintiff established a course of treatment. *Id.*

■■■■ When a claim accrues is a question of law, and not one of fact. *Chambers v. Conaway,* 883 S.W.2d 156, 159 (Tex. 1993). For purposes of the application of limitation statutes, a cause of action generally accrues when the wrongful act effects an injury, regardless of when the plaintiff learned of the injury. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990). In this case, Dr. Pate moved for traditional summary judgment on Ms. Mills' informed consent claims related to the December 2, 1999 liposuction surgery only.

Ms. Mills filed her medical malpractice suit on January 23, 2003. In her suit, Ms. Mills alleged that Dr. Pate failed to adequately disclose information to her regarding the two liposuction procedures and if he had disclosed the risks and hazards inherent in the procedures, she would have refused such treatment. The record shows that Ms. Mills first consulted with Dr. Pate on September 29, 1999. On November 17, 1999, Ms. Mills signed an informed consent form and a permission to perform surgery form for the 1999 liposuction surgery. Ms. Mills claimed that she was never told by Dr. Pate about the potential need for further procedures, never told that there might be rippling or other irregularities following liposuction, and was never told of possible adverse effects, like sagging skin and ripples. Further, Dr. Pate never disclosed to her that factors such as her age and smoking history could result in sagging skin or ripples. Dr. Pate performed the first liposuction surgery on Ms. Mills on December 2, 1999. Here, the date of the alleged breach or tort with regard to the informed consent claims is readily ascertainable— December 2, 1999, the date of surgery, that is, the last date that Dr. Pate failed to obtain Ms. Mills' informed consent before performing the first liposuction surgery. Because the date of the alleged tort with respect to the informed consent claims related to the first liposuction surgery is ascertainable, whether a course of treatment existed for Ms. Mills' injuries due to post-operative care and treatment is immaterial to our analysis. Therefore, we conclude that unless the record reveals a fact issue regarding fraudulent concealment, Ms. Mills' informed consent claims related to the first surgery are barred by the statute of limitations.

### Fraudulent Concealment

 Fraudulent concealment is an equitable doctrine that estops a defendant from relying on the statute of limitations as an affirmative defense to a plaintiff's claim. *Shah,* 67 S.W.3d at 841; *Borderlon v. Peck,* 661 S.W.2d 907, 908 (Tex.1983). Fraudulent concealment tolls the limitations in a medical negligence case until the patient discovers the fraud or could have discovered the fraud with reasonable diligence. *Shah,* 67 S.W.3d at 841; *Earle,* 998 S.W.2d at 888; *Borderlon,* 661 S.W.2d at 908. Proof of fraudulent concealment requires more than evidence that the physician failed to use ordinary care. *Earle,* 998 S.W.2d at 888. In order to establish fraudulent concealment, the plaintiff must show the health-care provider actually knew a wrong occurred, had a fixed purpose to conceal the wrong, and did conceal the wrong from the patient. *Shah,* 67 S.W.3d at 841; *Earle,* 998 S.W.2d at 887.

Ms. Mills' fraudulent concealment claim is based on the following evidence: (1) Dr. Pate knew that she had abdominal irregularities after the first surgery; (2) Dr. Pate added "uneven contour" to the list of possible adverse effects in the informed consent form for the second surgery, a risk that was not disclosed before the first surgery; and (3) Dr. Pate considered such irregularities an expected result from the surgery, but nevertheless, reassured Ms. Mills that the post-operative irregularities were just swelling. Ms. Mills argues that this evidence raises a fact issue as to whether Dr. Pate fraudulently concealed from her the fact that he had wronged her, by misrepresenting to her that the irregularities were merely swelling, tolling limitations until August 2001. Despite her contentions, however, there is simply no evidence that when Dr. Pate told Ms. Mills that the complained-of irregularities from the first surgery were just swelling, he did so in order to conceal the wrong done to her, therefore the evidence fails to show that Dr. Pate had a fixed purpose to conceal the alleged wrong. *See e.g., Shah,* 67 S.W.3d at 846 (physician's assurances related to the healing process did not show or suggest that the assurances were made to conceal a known wrong or to deceive plaintiff).

 Even if we were to agree with Ms. Mills that the evidence raises a fact issue as to her fraudulent concealment claim, we would conclude that she cannot rely on the tolling doctrine of fraudulent concealment to suspend limitations until August 2001. Here, the record undisputedly shows that six months after the December 2, 1999 surgery, Ms. Mills knew that the irregularities resulting from the first procedure were not just swelling. Ms. Mills expressed her concerns to Dr. Pate and specifically told him that the irregularities could no longer be attributed to swelling by that point in time. As previously stated, the fraudulent concealment tolls limitations until the plaintiff discovers the fraud or could have discovered the fraud with reasonable diligence. *Shah,* 67 S.W.3d at 841, *citing Velsicol Chem. Corp. v. Winograd,* 956 S.W.2d 529, 531 (Tex.1997). "The estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action." *Borderlon,* 661 S.W.2d at 909. By her own admission, Ms. Mills lost confidence in Dr. Pate's explanations for the irregularities she observed in her body's appearance six months after the first surgery. Thus, the estoppel effect, if any, ended in June 2001, not August 2001, and her informed consent claims relating to the first surgery would still be barred by limitations.

We conclude the trial court correctly granted Dr. Pate's traditional summary judgment motion because the informed consent claims relating to the first surgery were barred by the statute of limitations and Ms. Mills failed to present sufficient evidence to raise a fact issue on her fraudulent concealment claim. Issue One is overruled.

### Specificity of Summary Judgment Motion

█ In her second issue, Ms. Mills contends that the trial court erred in overruling her objection to Dr. Pate's no-evidence motion for summary judgment and thus, should not have granted that motion because it was general or conclusory—the type of no-evidence motion that is specifically barred under Rule 166a(i).

Texas Rule of Civil Procedure 166a(i) requires that the no-evidence summary judgment motion "state the elements as to which there is no evidence." *See* Tex. R.Civ.P. 166a(i). The comments to Rule 166a(i) which are "intended to inform the construction and application of the rule," states, "[t]he motion must be specific in challenging the evidentiary support for an element of a claim or defense; paragraph (i) does not authorize conclusory motions or general no-evidence challenges to an opponent's case." *See* Tex.R.Civ.P. 166a(i) cmt. Thus, under the rule, a no-evidence summary judgment motion must state the specific elements as to which there is no evidence, that is, it must not be general or conclusory. *See* Tex.R.Civ.P. 166a(i); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex.2002); *In re Estate of Swanson*, 130 S.W.3d 144, 147 (Tex.App.-El Paso 2003, no pet.).

Ms. Mills complains that Dr. Pate's no-evidence motion for partial summary judgment was general and conclusory because it challenged every element of her remaining claims in the lawsuit. Reviewing the no-evidence motion, we note that the introduction states that the motion addresses the remainder of Ms. Mills' claims, including her breach of express warranty claim. In the argument section, Dr. Pate identified the following claims for which he alleged Ms. Mills had no evidence: informed consent claims related to the January 2001 procedure; ordinary negligence claims, including the post-operative care and treatment claims; and the breach of express warranty claim. With regard to the remaining informed consent claims, the motion states:

> Plaintiff lacks evidence of every element of informed consent to the January 2001 procedure. She has no evidence of duty, breach, causation, or harm relating to the touch-up liposuction and thigh lift. Further, the injury she complains of, the abdominal rippling is dissatisfaction with cosmetic appearance and uneven contour, which were risks that were expressly disclosed to her.

For the ordinary negligence claims, the motion states, "Plaintiff has no evidence of duty, breach, cause or harm," specifically noting deficiencies in the deposition testimony of Ms. Mills' expert on the alleged breach of the standard of care. With regard to the breach of express warranty claim, the motion states, "[w]ithout waiving [Dr. Pate's] objection to Plaintiff's attempt to recast her negligence claim as a breach of contract claim, Plaintiff has no evidence of any element of the claim (sale, representation, basis of the bargain, breach, notices, or injury) and in particular, no signed writing setting out the alleged basis of the bargain between the parties."

We conclude that Dr. Pate's no-evidence challenge to Ms. Mills' remaining claims was sufficiently specific. The purpose of the specificity requirement is to provide the nonmovant with fair notice of the matters on which it must produce some evi-

dence. *Community Initiatives, Inc. v. Chase Bank of Texas*, 153 S.W.3d 270, 279 (Tex.App.-El Paso 2004, no pet.). While Dr. Pate's motion could have been more specific in addressing the challenged elements of the claims, the specificity required under Rule 166a(i) deals with evidentiary support for an element of a claim, not the evidentiary components that may prove an element of the cause of action. *See id.; Dominguez v. Payne*, 112 S.W.3d 866, 868 (Tex.App.-Corpus Christi 2003, no pet.); *Baker v. Gregg County*, 33 S.W.3d 72, 76 (Tex.App.-Texarkana 2000, no pet.); *In re Mohawk Rubber Co.*, 982 S.W.2d 494, 497–98 (Tex.App.-Texarkana 1998, orig. proceeding). "Moreover, nothing in rule 166a(i) or its comment forbids a defendant from challenging every element of the plaintiff's claims, as long as each element is distinctly and explicitly challenged." *Community Initiatives, Inc.*, 153 S.W.3d at 280. Contrary to Ms. Mills' assertions, this case is easily distinguishable from *In re Estate of Swanson*, 130 S.W.3d 144 (Tex.App.-El Paso 2003, no pet.). In *Estate of Swanson*, this Court determined that the no-evidence motion in that case contained only global and conclusory statements that there was no evidence of certain facts alleged in the plaintiff's petition and thus, failed to met the specificity requirements under Rule 166a(i). *Id.* at 147. Here, Dr. Pate's no-evidence motion was sufficiently specific in that it clearly listed the plaintiff's claims and identified the elements that were lacking in each claim. Issue Two is overruled.

### Review of No–Evidence Partial Summary Judgment

In Issue Three, Ms. Mills contends the trial court erred in granting Dr. Pate's no-evidence motion for summary judgment because the summary judgment evidence raised genuine issues of material fact as to all the challenged elements of her causes of action for failure to obtain informed consent and breach of warranty.[3]

### Informed Consent

■ In her petition, Ms. Mills alleged that Dr. Pate had failed to adequately disclose information to her as to the second liposuction and if he had disclosed the risks and hazards inherent in the procedure, she would have refused such treatment. In the no-evidence motion, Dr. Pate asserted that Ms. Mills lacked evidence as to every element of informed consent to the January 2001 procedure, specifically he alleged she had no evidence of duty, breach, causation, or harm relating to the touch-up liposuction and thigh lift.

Under former Tex.Rev.Civ.Stat. art. 4590i, section 6.02, for health care liability claims based on the failure of the physician to disclose or adequately to disclose the risks and hazards involved in the medical care or surgical procedure rendered by the physician, recovery may be obtained only under the theory of "negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent." *See* former Tex.Rev.Civ.Stat. art. 4590i, § 6.02[4], *see also Hartfiel v. Owen*, 618 S.W.2d 902, 905 (Tex.Civ.App.-El Paso 1981, writ ref'd n.r.e.)(a plaintiff may not recover for negligence under theory of informed consent unless he proves both that he would not have consented to treatment had he been informed of the undisclosed

---

3. Ms. Mills does not challenge the trial court's granting of summary judgment on her post-operative negligence claims.

4. Acts of 1977, 65th Leg., R.S., ch. 817, § 6.02, 1977 Tex.Gen.Laws 2039, 2048 (repealed 2003), now codified at Tex Civ.Prac. & Rem Code Ann. § 74.101 (Vernon 2005).

risk and that he was injured by the occurrence of the risk of which he was not informed).

Prior to the second surgery, Ms. Mills signed a consent form which specifically disclosed the following risks: "dissatisfaction with cosmetic results ... possible need of future revision to obtain improved results, poor wound healing, recurrence of the original condition, and uneven contour." Ms. Mills complains that by the time Dr. Pate included this warning in the consent document for the second surgery, she was already suffering these conditions. While we understand Ms. Mills' dilemma, it remains undisputed that Dr. Pate did disclose the risks and hazards inherent in the touch-up liposuction procedure, which she complained had not been disclosed to her in the first procedure. Further, even if Dr. Pate promised Ms. Mills that the second liposuction operation would fix all of the irregularities, this fact does not create a genuine issue of material fact as to whether or not Dr. Pate adequately disclosed the risks and hazards inherent in the second surgery. Therefore, we conclude the trial court correctly found there was no evidence that Dr. Pate failed to obtain Ms. Mills' informed consent to the second surgery.

### Breach of Express Warranty

■ Within her third issue, Ms. Mills also contends that the trial court erred in granting summary judgment as to her common law claim for breach of express warranty. In Dr. Pate's no-evidence motion, he asserted that Ms. Mills' breach of warranty claim was merely an attempt to recast her negligence claims as a breach of contract claim and, in addition, she had no evidence to support the elements of her claim.

■ A cause of action against a health care provider is a health care liability claim under the Act if it is based on a claimed departure from an accepted standard of medical care, health care, or safety of the patient, whether the action sounds in contract or tort. *See* former TEX.REV. CIV.STAT. art. 4590i, § 1.03(a)(4); *Diversicare General Partner, Inc. v. Rubio,* 185 S.W.3d 842, 847 (Tex.2005); *MacGregor Med. Ass'n v. Campbell,* 985 S.W.2d 38, 41 (Tex.1998)(per curiam); *Gormley v. Stover,* 907 S.W.2d 448, 449 (Tex.1995)(per curiam); *Sorokolit v. Rhodes,* 889 S.W.2d 239, 242 (Tex.1994). A cause of action alleges a departure from accepted standards of medical care or health care if the act or omission complained of is an inseparable part of the rendition of medical services. *Rubio,* 185 S.W.3d at 847. It is well settled that a health care liability claim cannot be recast as another cause of action to avoid the requirements of the Act. *Id.* at 851; *MacGregor Med. Ass'n,* 985 S.W.2d at 38. To determine whether a plaintiff has tried to do so, we must examine the underlying nature of the claim and are not bound by the form of the pleading. *Rubio,* 185 S.W.3d at 847; *MacGregor Med. Ass'n,* 985 S.W.2d at 40; *Sorokolit,* 889 S.W.2d at 242. If the claim is based on the physician's breach of the accepted standard of medical care, the cause of action is nothing more than an attempt to recast the malpractice claim. *See Gormley,* 907 S.W.2d at 450.

In this case, Ms. Mills amended her original petition to include a breach of express warranty claim. In her claim, she alleged that Dr. Pate made the following representations to her about the quality or characteristics of his services: (1) she was a suitable candidate for surgery; and (2) after liposuction surgery, she would look beautiful and that she would have smooth skin without ripples, bulges, or bags. She also alleged that Dr. Pate breached the warranty, as expressed in his representa-

tions because the services he provided did not conform to the character and quality of the services described, and subsequently, she was left with irregularities to her skin and body after Dr. Pate completed the two liposuction surgeries.

Relying on *Sorokolit*, Ms. Mills contends that where a physician promises particular surgical results, he may be held liable for breach of that express warranty. In *Sorokolit*, the physician guaranteed that following breast surgery, the plaintiff's breast would look just like the breasts in a photograph she selected prior to surgery. *Sorokolit*, 889 S.W.2d at 240. The *Sorokolit* Court concluded that the plaintiff's express warranty claim was not precluded under the Act where a physician guaranteed a particular result and the claim did not require "a determination of whether a physician failed to meet the standard of medical care...." *Id.* at 242–43.

Here, Ms. Mills presented more than a scintilla of probative evidence to support her common law claim for breach of an express warranty. The evidence from Ms. Mills' deposition testimony concerning Dr. Pate's remarks, the promised results, and injuries she suffered raises genuine issues of material fact as to each challenged element of Ms. Mills' breach of express warranty claim with respect to the first surgery, for which she paid Dr. Pate to perform. While Dr. Pate's representations about the quality or characteristics of the services he sold to Ms. Mills were, of course, related to their patient-client relationship, these representations are not inseparable from her negligence claims against him and consequently, they do not require a determination as to whether Dr. Pate failed to meet the ac-

cepted standard of medical care for cosmetic surgery. Thus, despite Dr. Pate's assertions, Ms. Mills' breach of warranty claim is not an improper attempt to recast her informed consent claim to avoid requirements of the Act. Rather, there is some evidence that Dr. Pate's particular representations were actionable as an express warranty claim in that his representations did not conform to the character and quality of the services promised, they formed the basis of the parties' bargain for the first surgery, and injury resulted to Ms. Mills. *See Southwestern Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 576–77 & n. 3 (Tex.1991)(noting elements of a breach of warranty claim).

In the no-evidence motion, relying on the statute of frauds, Dr. Pate asserted that a signed writing of the alleged representations was an element of Ms. Mills' breach of express warranty claim. We disagree with this contention. While the statute of frauds does require that an agreement, promise, contract, or warranty of cure relating to medical care or results thereof made by a physician or health care provider under the Act, must be in writing and signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him, this requirement is not the "functional equivalent" of an element to Ms. Mills' claim, but rather the lack of such a writing is an affirmative defense, which Dr. Pate has the burden to plead and prove. *See* TEX.BUS. & COM.CODE ANN. § 26.01(a) & (b)(8)(Vernon 2005). A trial court may not grant a "no-evidence" motion for summary judgment on an affirmative defense, therefore, such grounds would have been improper in this case.[5] *See Battin v. Saman-*

5. Dr. Pate notes in his appellate brief that the trial court would have eventually had to dismiss Ms. Mills' breach of express warranty claim for lack of a signed writing, pointing

out that his summary judgment motion was granted before he was able to argue his special exceptions and objections to the claim. We, however, reserve judgment as to the

*iego,* 23 S.W.3d 183, 185–86 (Tex.App.-El Paso 2000, pet. denied).

After reviewing the evidence under the appropriate standard, we conclude that the trial court correctly granted a no-evidence summary judgment on Ms. Mills' informed consent claims, but erred in granting a no-evidence summary judgment as to Ms. Mills' breach of express warranty claim for the first surgery because Ms. Mills presented some probative evidence to support the elements of her claim and because Dr. Pate's affirmative defense under the statute of frauds would have been an improper basis for granting the no-evidence summary judgment. Therefore, we sustain Ms. Mills' Issue Three only as to the erroneous granting of the no-evidence summary judgment on her breach of express warranty claim for the first surgery.

For the reasons stated above, we affirm the trial court's judgment in part, reverse in part, and remand the cause to the trial court for further proceedings.

eventual outcome of Ms. Mills' express warranty claim in any subsequent trial court proceedings.