Opinion issued February 12, 2009












 
 


    


In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-07-00587-CV
____________

BELMA KEY, a/k/a BELMA KEYKURUN, Appellant

V.

HECTOR M. VIERA, M.D., F.A.C.S., and COSMETIC SURGERY
ASSOCIATES, Appellees




On Appeal from County Civil Court at Law No.2
Harris County, Texas
Trial Court Cause No. 874441



 
MEMORANDUM OPINION

          Appellant, Belma Key, appeals the trial court’s summary judgment of her
claims against appellees, Dr. Hector Viera and Cosmetic Surgery Associates (“CSA”). 
We decide: (1) whether Veira and CSA’s motion for summary judgment, and the trial
court’s order granting that motion, applied to all of Key’s claims; (2) whether Key’s
claims for misrepresentation, common-law fraud, and breach of express warranty are
merely recast medical-malpractice claims that should be decided under the terms of
the Medical Liability and Insurance Improvement Act (“MLIIA”);


 and (3) whether
the absolute two-year statute of limitations set out in the MLIIA bars Key’s claims. 
We affirm.
Factual Background
          In August 2002, Key read an article in NU IMAGE magazine that contained
an interview by Viera. In a portion of the interview, Viera stated, “We rarely need to
do touch-ups with our patients . . . . If a touch-up is needed, we will perform this at
no charge to our patient.” Key made a consultation appointment with Viera to discuss
a facelift and liposuction. According to Key, at the consultation appointment, Viera
assured her that the liposuction procedure would result in a smooth and flat abdomen,
that the facelift would not leave any visible scars, and that she would be very happy
with the result or he would do any touch-ups needed at no charge.
          Key received a letter from CSA welcoming her to the office and offering to
provide more information at her request and stating, “We are very proud of our very
extensive experience and excellent results.” Viera and CSA also provided Key with
a list of Viera’s specific qualifications and certifications. Key decided to have Viera
perform her liposuction and facelift and scheduled a date for the surgical procedures.
          During her pre-surgical appointment with Viera, Key expressed concerns
regarding possible facelift scars, and Viera replied that the facelift incision would be
“right around this upper hairline right there so you won’t see it.” Key responded,
“But I pull my hair back,” and Viera rejoined, “That’s alright. You’ll still be able to
pull your hair back. It heals pretty darn good. In about five weeks, we will come
back and do a little sanding, a dermabrasion.” Key also expressed some concern over
the consent form that she had signed because it stated that some rippling and dimpling
was a possible result of the liposuction procedure. Viera replied, “That can happen. 
Very rare—infrequent. But then you have to be—the State of Texas wants you to
know all of the nasty things that can happen, because they’ll happen.”



          On September 26, 2002, Dr. Viera performed Key’s liposuction and facelift. 
At a follow-up appointment on January 20, 2003, Key complained that her face had
visible scars, that there was a knot on the right side of her face, and that her abdomen
was not smooth and flat as Viera had promised it would be. Key requested a touch-up
liposuction at no charge, but Viera told her that a touch-up would be dangerous and
would possibly cause rippling. Viera’s progress note dated January 20, 2003 stated,
“C/o some unevenness of her abdomen. Exam: Even fat removal was done, minor
unevenness. I advised we cannot remove more fat since she will then get rippling. 
I advised engermologie [sic] and touch up of 4x3 cm small fat lump on right
abdomen.” Key never had the suggested follow-up procedures, but she did make
another follow-up appointment with Viera on July 14, 2003.
          In his notes from that follow-up appointment, Viera commented:
Ms. Key complains of lumpiness of her abdomen. Examination reveals
skin redundancy; no evidence of abdominal fat bulges or lumps is
evident.
 
I again explained to Ms. Key that what she describes as “lumps” is skin
redundancy, due to the skin flaccidity which was present pre-operatively.
 
I recommended endermologie for her skin, so as to help tighten such. 
She declined, not wanting to spend more money.
 
Her face reveals some depigmentation of her right pre-auricular scars
and hypertrophy of her left post-auricular scar. I offered to touch up
these for her and to come in to have these done.
 
Key again chose not to pursue the recommended follow-up procedures.
          In 2005, Key visited another cosmetic surgeon for a consultation on an
unrelated procedure. In the course of this appointment, Key asked her new cosmetic
surgeon for a second opinion on Viera’s claim that a touch-up liposuction would be
dangerous and would cause more rippling. The new cosmetic surgeon informed that
she could receive a smooth result with additional liposuction treatment.
Procedural History
          Key filed her original petition on September 25, 2006, alleging breach of
contract, common law fraud, and negligent misrepresentation against Viera and CSA.


 
Key later filed an amended petition alleging breach of express warranty based on the
representations made to her by Viera and CSA, common-law fraud based on Viera’s
representation “that removing more fat would cause rippling and that there [are] no
fat bulges or lumps evident,” and misrepresentation based on Viera and CSA’s
provision of “false information in the course of his/their business.”
          Key asserted that the NU IMAGE interview and the printed materials and
letters given to her by Viera and CSA contained promises and warranties about
Viera’s cosmetic surgical abilities which induced her to hire him to perform her
liposuction and facelift. Key claimed that Viera “promised and warranted” that the
liposuction procedure would result in a smooth and flat abdomen, that the facelift
would not leave any visible scars, that she would be very happy with the result, and
that he would do any touch-ups needed at no charge. Key asserted that, based on
these representations and documents, Viera and CSA guaranteed a specific result
which they did not provide, therefore breaching an express warranty.
          Viera and CSA filed a joint traditional motion for summary judgment on March
7, 2007, asserting the affirmative defense that all Key’s claims were actually medical
malpractice and negligence claims that should be governed by the MLIIA and were
therefore barred by the two-year statute of limitations.


 They also argued that Key did
not have a signed writing as evidence of the express warranty, as required by the
statute of frauds.


 Key filed a response to Veira and CSA’s motion for summary
judgment on March 23, 2007, arguing that the MLIIA does not preclude suits “for
knowing misrepresentation or breach of express warranty in cases in which a
physician or health care provider warrants particular results,” and, therefore, the
MLIIA’s two-year statute of limitations should not apply to her case. The trial court
granted Viera and CSA’s motion for summary judgment in an order dated April 11,
2007. On May 11, 2007, Key filed a motion for new trial, which the trial court
denied.
          On appeal, Key raises five issues. In part of her fifth issue, Key claims that the
trial court’s April 11, 2007 order did not dispose of her common-law fraud and
misrepresentation claims. We construe this as a contention that we lack jurisdiction
to hear this appeal because the trial court’s order was not final, and we address this
issue first.Jurisdiction
          Unless specifically authorized by statute, we have appellate jurisdiction to
review only final judgments. Tex. Civ. Prac. & Rem. Code Ann. § 51.012 (Vernon
2008); Stolhandske v. Stern, 14 S.W.3d 810, 813 (Tex. App.—Houston [1st Dist.]
2000, pet. denied). It is jurisdictional fundamental error for a court of appeals to
assume appellate jurisdiction over an interlocutory order when not expressly
authorized to do so by statute. N.Y. Underwriters Co. v. Sanchez, 799 S.W.2d 677,
679 (Tex. 1990).
          In a summary judgment proceeding, a judgment is not final for purposes of
appeal “unless it actually disposes of every pending claim and party or unless it
clearly and unequivocally states that it finally disposes of all claims and all parties.” 
Lehmann v. Har-Con Corp., 39 S.W.3d 191, 205 (Tex. 2001). We must therefore
decide whether the trial court’s order actually disposes of every pending claim and
party or unequivocally states that it finally disposes of all claims.
          In her first amended petition, Key claimed that (1) Viera breached an express
warranty; (2) Viera made material false representations to her by claiming that
removing more fat would cause rippling and that no fat bulges or lumps were evident;
(3) Viera and CSA knowingly supplied false information in the course of their
business; and (4) Viera and CSA’s false, misleading, and deceptive acts resulted in
Key’s high degree of mental pain and distress. In their motion for summary
judgment, Viera and CSA argued that Key’s claims were all barred because her
claims were based on medical care provided by physicians and were therefore subject
to the provisions of the MLIIA, which requires that health-care-liability claims be
filed within two years from the occurrence of the breach or tort. See Tex. Civ. Prac.
& Rem. Code Ann. § 74.251(a) (Vernon 2005).
          The trial court’s order granting Viera’s motion for summary judgment states:
On this day came onto be heard [Viera and CSA’s] Motion for Summary
Judgment as to All Claims by [Key]. . . . After considering the Motion
and responses thereto, the Court is of the opinion that there is no
genuine issue of material fact in this case against [Viera and CSA] and
that [Viera and CSA] are entitled to judgment as a matter of law. 
Therefore, it is hereby ORDERED that [Viera and CSA’s] Motion for
Summary Judgment is in all respects GRANTED, and that [Key] shall
take nothing by way of her action against [Viera and CSA].
 
          Viera and CSA’s motion for summary judgment attacked all of Key’s claims
as being miscast health-care-liability claims. In granting Viera and CSA’s motion for
summary judgment “in all respects,” the trial court disposed of all of Key’s issues
against Viera and CSA. Furthermore, the trial court unequivocally stated that “there
is no genuine issue of material fact” in Key’s case against Viera and CSA and that
Key “shall take nothing by way of her action against” Viera and CSA. Therefore, the
order was final and we have jurisdiction over the appeal. See Tex. Civ. Prac. &
Rem. Code Ann. § 51.012; Lehmann, 39 S.W.3d at 205.
          We overrule this portion of Key’s fifth issue.
Specificity in Motion for Summary Judgment
          In the balance of her fifth issue, Key complains that Viera and CSA’s motion
for summary judgment was not sufficiently specific regarding her common-law fraud
and misrepresentation claims to provide her with fair notice of the matters on which
she needed to produce evidence and that Viera and CSA’s motion for summary
judgment did not sufficiently address her fraud and misrepresentation claims.
          A court cannot grant summary judgment on grounds that were not expressly
presented. Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 204 (Tex. 2002);
Science Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 912 (Tex. 1997); see also Tex.
R. Civ. P. 166a(c) (“The motion for summary judgment shall state the specific
grounds therefor.”). The purpose of Rule 166a(c)’s requirement that motions for
summary judgment state the specific grounds to be considered by the trial court is “to
provide adequate information for opposing the motion, and to define the issues.” 
McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 341 (Tex. 1993).



          We hold that Viera and CSA’s motion for summary judgment addressed all of
Key’s claims, as we have already addressed in our discussion of jurisdiction. The
motion for summary judgment specifically stated that it applied “to all claims by
[Key],” and it discussed the actions and omissions that were the basis of all of her
claims, including her common-law fraud claim based on Viera’s assertion that more
liposuction would not help her and her misrepresentation claims based on letters and
other information given to her by Viera and CSA. These arguments were sufficient
to define the issues presented in Viera and CSA’s motion for summary judgment and
were sufficiently specific to provide Key adequate information for opposing the
motion. See Tex. R. Civ. P. 166a(c); McConnell, 858 S.W.2d at 341.
          We overrule the balance of Key’s fifth issue.
          We must now determine whether any of the grounds for summary judgment
raised in Veira and CSA’s motion for summary judgment would support the trial
court’s granting of summary judgment. See FM Props. Operating Co. v. City of
Austin, 22 S.W.3d 868, 872–73 (Tex. 2000) (holding that reviewing court must affirm
summary judgment if any of summary judgment grounds is meritorious).
Applicable Statue of Limitations
          One possible ground for summary judgment which was raised in Viera and
CSA’s motion is that all of Key’s claims were barred by the two-year statute of
limitations of the MLIIA.
          In her fourth issue, Key claims that the trial court erred in granting summary
judgment on Viera and CSA’s statute of limitations defense because her suit was
timely filed under the four-year statute of limitations applicable to common law
claims of fraud and breach of express warranty. See Tex. Civ. Prac. & Rem. Code
Ann. § 16.004(a)(4) (Vernon 2002), § 16.051 (Vernon 2008) (fraud and four-year
statute of limitations for every action for which there is no express limitations period,
respectively); Waters ex rel. Walton v. Del-Ky, Inc., 844 S.W.2d 250, 259 (Tex.
App.—Dallas 1992, no writ) (four-year limitations period applies to common law
breach of express warranty claims). Viera and CSA argue that the four-year statute
of limitations does not apply to Key’s claims because her purported common law
claims are actually recast medical malpractice claims that should be subject to the
two-year statute of limitation in the MLIIA.
          In her second issue, Key argues that her breach of warranty claim was not a
recast negligence or medical-malpractice claim which would be governed by the
provisions of the MLIIA, but was, instead, a claim asserting a breach of express
warranty in a case in which a physician or healthcare provider had warranted a
particular result. See Sorokolit v. Rhodes, 889 S.W.2d 239, 240 (Tex. 1994). Key
asserts that the Texas Supreme Court has held that such claims are not precluded by
the MLIIA, citing Sorokolit. Viera and CSA respond that Key’s claims do not fall
within the exception recognized by the Sorokolit court because Key’s claims are
based on an alleged deviation from an acceptable standard of care, making them
health-care-liability claims under the MLIIA.
A.      Standard of Review
          We review de novo the trial court’s grant of summary judgment. Provident
Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). We must make
inferences, resolve doubts, and view the evidence in the light most favorable to the
non-movant. Rhône-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999).
          In an appeal from a traditional motion for summary judgment, we determine
whether the movant met its burden of establishing that no genuine issue of material
fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ.
P. 166a(c); Knott, 128 S.W.3d at 215–16. A defendant is entitled to summary
judgment if the evidence disproves as a matter of law at least one element of each of
the plaintiff’s causes of action or if it conclusively establishes all elements of an
affirmative defense. Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711
(Tex. 1997). When, as here, a trial court’s order does not specify the grounds relied
upon, we affirm the summary judgment if any of the summary judgment grounds is
meritorious. FM Props. Operating Co., 22 S.W.3d at 872–73.
          The statute of limitations operates as an affirmative defense. See KPMG Peat
Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999). 
A party moving for summary judgment on the basis of the limitations defense must
conclusively establish the bar of limitations. Id. If the movant establishes that the
statute of limitations bars the action, the nonmovant must then provide summary
judgment proof raising a fact issue in avoidance of the statute of limitations. Id.
          Accordingly, Viera and CSA had the burden to conclusively prove each
essential element of their statute of limitations defense in regard to each of Key’s
claims. See id. The burden would then shift to Key to provide evidence raising a fact
issue to avoid the statute of limitations. See id.
B.      Nature of Key’s Claims
          As a threshold question, we must determine whether Key’s claims against
Viera and CSA fall outside the scope of the MLIIA, or whether Key has merely
attempted to frame her claims in such a way as to avoid the standards and
requirements of the Act, including the two-year statute of limitations.
          Whether a claim is a health-care-liability claim under the MLIIA is a question
of law that is reviewed de novo. Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d
842, 847 (Tex. 2005); Hunsucker v. Fustok, 238 S.W.3d 421, 425 (Tex.
App.—Houston [1st Dist.] 2007, no pet.). A health-care-liability claim under the
current statute is defined as:
[A] cause of action against a health care provider or physician for
treatment, lack of treatment, or other claimed departure from accepted
standards of medical care, or health care, or safety or professional or
administrative services directly related to health care, which proximately
results in injury to or death of a claimant, whether the claimant’s claim
or cause of action sounds in tort or contract.
 
Tex. Civ. Prac. & Rem. Code Ann. § 74.001(13) (Vernon 2005). A healthcare
liability claim cannot be recast as another cause of action to avoid the requirements
of the Act. Rubio, 185 S.W.3d at 851; see also Hunsucker, 238 S.W.3d at 426 (“It is
well established ‘that a claimant cannot escape the Legislature’s statutory scheme by
artful pleading.’”) (quoting Murphy v. Russell, 167 S.W.3d 835, 838 (Tex. 2005)).
          “A cause of action against a health care provider is a health care liability claim
under the MLIIA if it is based on a claimed departure from an accepted standard of
medical care, health care, or safety of the patient, whether the action sounds in tort
or in contract.” Rubio, 185 S.W.3d at 848. “A cause of action alleges a departure
from accepted standards of medical care or health care if the act or omission
complained of is an inseparable part of the rendition of medical services.” Id. To
determine whether a plaintiff has tried to recast a health care liability claim as another
cause of action, we must examine the underlying nature of the claim. Id. at 847.
          For example, in Gormley v. Stover, the supreme court upheld the trial court’s
grant of summary judgment based on the limitations defense, holding that a dentist’s
alleged misrepresentations regarding his ability to perform a recommended surgical
procedure and the likely results of such a procedure were MLIIA claims. 907 S.W.2d
448, 450 (Tex. 1995). The court reasoned that the alleged misrepresentations had to
do with whether the dentist’s selection of procedure and performance of it deviated
from the established standard of care. Id.
          In Walden v. Jeffery, a patient sued her dentist for breach of implied warranty,
breach of contract, and violations of the Deceptive Trade Practices Act (DTPA) for
failure to provide dentures that fit. 907 S.W.2d 446, 447 (Tex. 1995). Again, the
supreme court held that a claim for ill-fitting dentures is a health care liability claim
governed by the MLIIA because providing dentures was inseparable from health care
provided to the patient as part of the provision of professional dental services. Id. at
448.
          In MacGregor Medical Association v. Campbell, a patient sued a hospital
under the DTPA, alleging that the hospital failed to provide quality medical care as
promised in its HMO literature and that the hospital “represented—both verbally and
in its HMO marketing materials—that it would provide ‘qualified personnel and
resources,’ ‘the best health services possible,’ and emergency service ‘24 hours a day,
even in a distant city.’” 985 S.W.2d 38, 40 (Tex. 1998). The supreme court held that
the plaintiff’s claims were subject to the provisions of the MLIIA, that the provider’s
statements were not specific guarantees of a particular result, and that the plaintiff
would have to “prove a breach of the applicable standard of care for health care
providers” to successfully prove her claim. Id. at 40–41.
          Key’s claim for breach of warranty is based on Viera’s breach of the accepted
standard of medical care. See id.; Gormley, 907 S.W.2d at 450. In her petition and
deposition, Key alleged that Viera performed liposuction on her abdomen and left
pockets of fat that caused uneveness rather than the smooth, flat result she desired. 
Viera made the complained-of actions as an integral part of the rendition of his
medical services. To successfully prove her claims that Viera breached his warranty
to provide a smooth and flat stomach, Key would have to establish that Viera’s
judgment concerning the amount of fat removed during the liposuction procedure or
the precise manner used in carrying out the procedure fell below the accepted
standard of care. 
          Likewise, to successfully prove her claim that Viera breached his express
warranty that she would not have visible scars from the facelift, she would have to
prove that Viera should have performed her surgery in a different manner or that the
amount of scarring she complained of was evidence that his care failed to meet the
accepted standard. To prove her claims that Viera breached his warranty to provide
touch-ups at no charge, Key would have to establish that his professional judgment
concerning what procedures were necessary or appropriate fell below the accepted
standard of care. All of the complained of acts and omissions were an inseparable
part of his professional services as a plastic surgeon. See Rubio, 185 S.W.3d at 848;
see also Sterrett v. Jacobs, 118 S.W.3d 877, 880 (Tex. App.—Texarkana 2003, pet.
denied) (holding that breast implant procedure was inseparable part of plastic
surgeon's professional services).
          Key’s claims for common-law fraud are also subject to the MLIIA. Her fraud
claim is based on Viera’s statement in January 2003 that another liposuction
procedure would result in more rippling and dimpling. To succeed in this claim, Key
would have to attack Viera’s professional judgment regarding the appropriate follow-up procedure as falling below the accepted standard of medical care. See Rubio, 185
S.W.3d at 847–48. Furthermore, Key’s summary judgment proof on this issue relied
on the opinion of another cosmetic surgeon who told her that she could receive a
smoother and flatter abdomen with additional treatment. See Boothe v. Dixon, 180
S.W.3d 915, 919 (Tex. App.—Dallas 2005, no pet.) (“One consideration [in
determining whether the underlying cause of action is based on a breach of the
standard of care] may be whether proving the claim would require the specialized
knowledge of a medical expert.”).
          Key’s claims for misrepresentation are also subject to the MLIIA. This claim
is based on the general representations made by Viera and CSA regarding their
qualifications as health-care providers. These claims are similar to those made in
Campbell. See 985 S.W.2d at 40 (provider represented that it would provide
“qualified personnel and resources,” “the best health services possible,” and
emergency service “24 hours a day”). We hold that the representations made to Key
were not specific guarantees of a particular result, and that Key would have to prove
a breach of the applicable standard of care for health care providers to successfully
prove her claim. See id. at 40–41.
          Key contends that her claims do not fall within the ambit of the MLIIA because
she “did not plead a cause of action requiring the analysis of any standard of care,”
and, thus, her claims are not health-care-liability claims. Rather, Ms. Key attempts
to characterize her claims as falling outside the MLIIA by asserting common-law
fraud and breach of warranty claims. However, as we have already discussed, we
look to the underlying nature of the claims and are not bound by the form of the
pleading when determining whether a cause of action falls under the MLIIA’s
definition of a health-care-liability claim. See Rubio, 185 S.W.3d at 847.
          Key urges this Court to consider Mills v. Pate, 225 S.W.3d 277 (Tex. App.—El
Paso 2006, no pet.), and Sorokolit v. Rhodes, 889 S.W.2d 239 (Tex. 1994), in support
of her claim that her causes of action are not health care liability claims. In Mills, a
patient sued her plastic surgeon following liposuction and thigh lift surgery that
caused her skin to sag severely, claiming that he promised that she was a suitable
candidate for the surgery, and that she would have smooth skin without ripples,
bulges, or bags after the surgery. 225 S.W.3d at 289. The Mills court held that
although the patient’s claims arose out of the patient-client relationship, they were not
inseparable from her negligence claims and therefore did not require a determination
as to whether Dr. Pate failed to meet the accepted standard of medical care because
“there [was] some evidence that Dr. Pate’s particular representations were actionable
as an express warranty claim in that his representation did not conform to the
character and quality of the services promised.” Id. at 290. The Mills court relied
heavily on Sorokolit in reaching this conclusion. Id. at 289–90.
          In Sorokolit v. Rhodes, a plastic surgeon instructed a client and her husband to
select a picture of a nude model from a magazine, promising that, following surgery,
her breasts would look like those in the picture she selected. 889 S.W.2d at 240. 
When the result was not as guaranteed, the patient sued the surgeon for negligence
and DTPA misrepresentation and warranty claims. Id. at 240–41. The supreme court
held that neither of the patient’s DTPA claims involved negligence, and that the
MLIIA only bars claims based on negligence, but does not preclude DTPA suits “for
knowing misrepresentation or breach of express warranty in cases in which a
physician or health care provider warrants a particular result.” Id. at 242–43.
          Key’s allegations are unlike those in Mills and Sorokolit, in which the courts
found evidence that the doctors specifically guaranteed and warranted a particular
result. See Mills, 225 S.W3d at 290; Sorokolit, 889 S.W.2d at 240. Viera’s general
assertions that Key’s stomach would be smooth and flat, that Key would still be able
to pull her hair back because the scars from the facelift would heal “pretty darn
good,” and that she would be happy with the results were not of the same specificity
or particularity as the promise made by the surgeon in Sorokolit. See id., 889 S.W.2d
at 240 (allowing DTPA breach of warranty claim when surgeon promised patient that
her breasts would just like those in particular picture after her surgery). Instead, Key
complains of acts and omissions that are an inseparable part of Viera’s professional
services as a plastic surgeon. See Earle v. Ratliff, 998 S.W.2d 882, 885, 893 (Tex.
1999) (surgeon’s statements that patient needed surgery, would get “95% better” and
able to return to work, and that devices being implanted were safe and permanent
could not be brought under DTPA, but were medical negligence claims); Campbell,
985 S.W.2d at 40–41 (holding that provider’s failure to advise patient of possible
complications of his condition and misrepresentation that patient “was medically
fine” indicated cause of action that was subject to MLIIA); Gormley, 907 S.W.2d at
449–50 (holding that representations that surgeon “could perform the surgery with
no problems, that a skin graft would work as well as a bone graft, that [the patient’s
dentures] would fit well and . . . she would have no problems wearing [them]” all had
to do with whether surgeon’s selection of surgical procedure and performance of it
met standard of care for dentists in such circumstances); Walden, 907 S.W.2d at 448
(holding that MLIIA applied to suit against dentist who failed to provide dentures that
fit as promised).
          We overrule Key’s second issue.C.Timeliness of Suit
          Key argues that her suit was timely filed under the four-year statute of
limitations. However, we have held that her claims were health-care-liability claims,
and they were therefore subject to the statute of limitations in the MLIIA. See Earle,
998 S.W.2d at 885–86. Under the MLIIA, “[N]o health care liability claim may be
commenced unless the action is filed within two years from the occurrence of the
breach or tort or from the date the medical or health care treatment that is the subject
of the claim or the hospitalization for which the claim is made is completed.” Tex.
Civ. Prac. & Rem. Code Ann. § 74.251(a); see Earle, 998 S.W.2d at 886–87
(holding that limitations began to run from date of patient’s surgery). Key’s surgery
occurred on September 26, 2002, but she did not file this lawsuit until September 25,
2006, almost four years later. Therefore, Key did not file her suit within the required
time limit. See Tex. Civ. Prac. & Rem. Code Ann. § 74.251(a); Earle, 998 S.W.2d
at 885–87.
          We overrule Key’s fourth issue.
          We hold that Viera and CSA established their affirmative defense of limitations
because all of Key’s claims are properly classified as medical liability claims under
the MLIIA, and because she failed to file her lawsuit within the required two-year
time limit. Key failed to present any summary judgment evidence raising a fact issue
in avoidance of the two-year statute of limitations. See KPMG, 988 S.W.2d at 748. 
This was sufficient grounds for the trial court to grant Viera and CSA’s motion for
summary judgment. See Merrell Dow Pharms., 953 S.W.2d at 711 (holding that
defendant is entitled to summary judgment if it conclusively establishes all elements
of affirmative defense). We therefore need not address Key’s remaining issues on
appeal. See FM Props. Operating Co., 22 S.W.3d at 872–73 (holding that reviewing
court must affirm summary judgment if any of summary judgment grounds is
meritorious).
Conclusion
          We affirm the judgment of the trial court.
 
 
 
Tim Taft
Justice
 
Panel consists of Justices Taft, Bland, and Sharp.